W. L. Shellenberger et al., Appellants, v. F. G. Patterson et al., and The Altoona, Clearfield & Northern R. R. Co.

*Railroads—Stock subscription—Estoppel.*

Where a stock subscription is made by an agent of a railroad company for the purpose of obtaining a loan from a third party, and such subscription is recognized by the stockholders and directors of the company, who accept the loan with a knowledge of such subscription, and presumably with a knowledge that without such subscription the loan would have been invalid and contrary to law, the stockholders and directors of the company are estopped from asserting that the subscription is invalid because not made in writing and in the prescribed form.

Where a person has subscribed to the unissued stock of a corporation, which corporation has accepted the subscription without offering to allot such stock amongst the stockholders, a stockholder has no remedy in equity to compel the issue of any portion of such stock to himself, or to have the subscription of the one who subscribed to the stock declared invalid. If injured, he has his remedy at law to recover damages for such injury.

It seems that in such a case a stockholder cannot complain where it appears that no stockholder offered to take or was willing to take the stock at par, or that it would have sold for more.

*Corporations—Acts of officers de facto.*

Acts of officers de facto of a corporation are not valid when such acts are for their own benefit, because they cannot take advantage of their own want of title, of which they must be cognizant. It is only where it is for the benefit of strangers, or the public, who are presumed to be ignorant of such defects of title, that their acts are good.

Argued April 22, 1895. Appeal, No. 204, July T., 1894, by plaintiffs, from decree of C. P. Blair Co., Equity Docket A, No. 212, dismissing bill in equity. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain issuing stock of a corporation.

The case was referred to J. S. Leisenring, Esq., as master, who reported the facts to be as follows :

" 1. That in the month of September, 1891, F. G. Patterson, acting as agent of the Altoona, Clearfield & Northern Railroad Company, subscribed for and directed S. J. Westley, treasurer of the company, to note his subscription to six hundred shares of the company's capital stock. That such stock so subscribed for was not an increase of the stock of said corporation, as alleged in plaintiffs' bill, but was a part of the original capital stock of said company.

" 2. That no entry was made at that time of such subscription upon any book or record of the company, nor upon any subscription list or memorandum of any kind.

" 3. That the company kept no subscription book in which such entries of subscription so made by any one were noted.

" 4. That no money of any amount whatsoever was then paid or offered to be paid, neither ten per cent of the par value nor any other amount.

" 5. That no offer was made by said F. G. Patterson to pay anything upon said subscription until the 6th day of January, 1893, when Mr. Patterson tendered to Mr Westley ten per cent, or three thousand dollars ($3,000), of the par value of the six hundred shares so subscribed for, and which was refused by Mr. Westley, and that, subsequently, on Feb. 23, 1893, Mr. Patterson tendered to Mr. Westley, as treasurer of the company,

a check of Theo. H. Wigton, cashier of the Altoona Bank, for thirty thousand dollars ($30,000), in payment of the par value of the six hundred shares of capital stock so previously subscribed for.

"6. That the money covered by said check for thirty thousand dollars ($30,000) was to be furnished by S. M. Prevost, general manager of the Pennsylvania Railroad Company, and was the money of that company, and that an arrangement or agreement existed between F. G. Patterson and the said S. M. Prevost for the assignment or transfer of the said certificate for six hundred shares to the said S. M. Prevost, for the use of the Pennsylvania Railroad Company.

"7. That both the stockholders and directors of the Altoona, Clearfield & Northern Railroad Company had knowledge of the subscription so directed or made by F. G. Patterson to the six hundred shares of stock, and, with such knowledge, they, the stockholders, voted an increase of the company's indebtedness, and the directors instructed and empowered the president (Mr. Patterson) and the secretary to issue bonds and execute the mortgage of the company for sixty thousand dollars ($60,000).

"8. That said subscription so made by Mr. Patterson was made for the advantage of the company and to enable the company to increase its indebtedness and issue the bonds and execute the mortgage as aforesaid, and was made as agent of the company.

"9. That under the decree of the court of common pleas of Blair county, in certain quo warranto proceedings, the plaintiffs herein were placed in possession and control of the Altoona, Clearfield & Northern Railroad Company on the 29th day of August, 1893, and so continued in possession until the 16th day of November, 1893, in the management and control and operation of said road.

"10. That the plaintiffs herein, while in possession, control and management of the road as aforesaid, did, by the action of the acting, or de facto, board of directors, declare illegal the subscription of F. G. Patterson to the six hundred shares of stock, and did, by a minute adopted, order and direct that notice be given to each and all of the stockholders that they are entitled to subscribe to an issue of six hundred shares of stock in proportion to their holdings of stock already subscribed and paid

for, and that notice was actually given to all of said stockholders, and that two hundred and eighty-seven (287) shares of the six hundred shares claimed by plaintiffs to have been illegally issued by F. G. Patterson to himself were subscribed for.

"11. That for the two hundred and eighty-seven (287) shares of company's stock so subscribed for and issued to the several stockholders of the company subscribing, nothing was paid of value, but the alleged payment was consummated or accomplished by an exchange of checks between the company and the stockholders so subscribing, and the certificates for the stock so subscribed for were acquired by the several stockholders without value.

"12. That no indebtedness of the company of any certain or positive character due the stockholders, and to whom were given the company's checks, is shown to exist, and that as far as the evidence goes such checks were without consideration.

"13. That the de facto board of directors, by whom such allotment, or distribution of stock was made, were members of the company, and either stockholders or directors at the time the company acquired knowledge of the original subscription of Mr. Patterson to the six hundred shares of stock, and at the time the stockholders voted an increase of the company's indebtedness, and directed the issuing of the bonds and the execution of the mortgage for $60,000.

"14. That the Altoona, Clearfield & Northern Railroad is a narrow gauge road, commencing at Altoona and extended by its charter line to Fallen Timber, on the Cresson & Coalport Railroad, a distance of about seventeen (17) miles, and that it is at this time constructed and operated as far as Dougherty's, a distance of about twelve (12) miles from Altoona.

"15. That the Cresson & Coalport road extends from Cresson, in Cambria county, to Irvona, in Clearfield county, and that the distance from Cresson to Fallen Timber is about twenty (20) miles, and that the road is of standard gauge.

"16. That the Cresson & Coalport Railroad connects at Cresson with the main line of the Pennsylvania Railroad, and that the distance via the Pennsylvania Railroad from Cresson to Altoona is about fourteen (14) miles.

"17. That the Cresson & Coalport Railroad is a leased line of the Pennsylvania Railroad Company, and is by said company

operated and managed, and that there is no traffic connection or contract between the Pennsylvania Railroad and the Altoona, Clearfield & Northern Railroad, either at Altoona or at Fallen Timber.

"18. That there is now in progress of construction a railroad known as the Altoona & Philipsburg Connecting Railroad, extending from Philipsburg station, on the Beech Creek Railroad, in Clearfield county, Pennsylvania, and immediately adjacent to the borough of Philipsburg and the Tyrone & Clearfield Railroad, southwesterly to Janesville, in Clearfield county, and in the direction of, and five miles distant from, Dougherty's on the Altoona, Clearfield & Northern Railroad.

"19. That the Tyrone & Clearfield Railroad is owned and operated by the Pennsylvania Railroad Company, and is a part of its system, and that Philipsburg is a point on the Tyrone Clearfield Railroad, and that Altoona is a point on the Pennsylvania Railroad.

"20. That the extension or construction of the Altoona, Clearfield & Northern Railroad from Dougherty's to Fallen Timber, the terminus fixed by its charter, does not make it a competing line with the Cresson & Clearfield Railroad for either freight or passenger traffic originating at Altoona to be shipped and carried to Fallen Timber, or the country tributary thereto, nor for freight and passenger traffic originating at Fallen Timber and the country adjacent, to be shipped and carried to Altoona. Nor are the Cresson & Coalport and the A., C. & N. R. R. parallel to each other.

"21. That the Altoona & Philipsburg Connecting Railroad, as now projected, is not, in any sense, a competitive line, either with the Cresson & Coalport Railroad, the Pennsylvania Railroad, nor the Tyrone & Clearfield Railroad nor their branches, for freight or passenger traffic coming from the Beech Creek & Reading Railroad from Philipsburg, Osceola Mills, Houtzdale or Ramey or any other points in Clearfield county to Altoona, nor with the Pennsylvania systems between New York and Philadelphia, nor points in Eastern Pennsylvania, nor in New Jersey to Altoona and vice versa.

"22. That after the reinstatement of the defendants in the control of the Altoona, Clearfield & Northern Railroad by resolution, as appears in the minutes of the board of directors, the

subscription to the six hundred shares of stock made by F. G. Patterson was recognized, confirmed and ratified, and that the treasurer of the company was requested to sign a certificate for such shares, which certificate had been issued by F. G. Patterson to himself on the 23d of February, 1893, upon the payment to the treasurer of the thirty thousand dollars ($30,000), being the par value of the said six hundred shares of stock.

"23. That at the same meeting the board of directors declared the shares of stock allotted or distributed by the de facto board to be wholly unlawful and illegal, and the solicitors of the company were instructed to take such steps as were necessary to cancel such certificates and cause the same to be returned to the office of the company.

"24. That said F. G. Patterson, as president of the Altoona, Clearfield & Northern Railroad Company, did, in his annual report of December, 1892, recommend a 5 per cent dividend to be paid to the stockholders, and that this portion of his report was stricken out by action of the board of directors at a meeting held on the —— day of January, 1893."

The master's conclusions of law were as follows :

" 1. That the action of the stockholders and board of directors of the Altoona, Clearfield & Northern Railroad Company, voting an increase of the indebtedness of the company, and in directing an issue of the bonds and the execution of the mortgage for the said sixty thousand dollars ($60,000), with a knowledge of the previous subscription of F. G. Patterson to the six hundred shares of stock, was a ratification of his act, and placed in him the title to such stock, which could not subsequently be questioned or disturbed by any future action of the company or its board of directors, and this, whether at the time of subscribing the ten per cent of the par value of the stock or any other amount was paid by him or not. As between the company and Mr. Patterson the regularity and legality of his act cannot be questioned.

" 2. That it became the duty of S. J. Westley, the treasurer of the company, to accept from F. G. Patterson ten per cent, or three thousand dollars ($3,000), tendered him on the 6th day of January, 1893, and to accept from him a check tendered on the 23d day of February, 1893, for thirty thousand dollars ($30,000), and to countersign at that time the certificate of stock for the six hundred shares.

" 3. That the action of the de facto board, in allotting, or distributing, the two hundred and eighty-seven (287) shares of stock was an irregular and illegal act, and this, whether the stock so allotted or distributed was actually paid for or not, and the certificates so issued are void.

" 4. That the action of the defendants' board of directors, in recognizing, confirming and ratifying the subscription of F. G. Patterson to the six hundred shares of stock, placed in said Patterson a title to said stock which could not be questioned or disturbed, upon his paying to the treasurer the par value of the said six hundred shares of stock, even supposing that the action of the stockholders of the company in voting an increase of the company's indebtedness, and the issuing of the bonds and the execution of the mortgage, was not a ratification of the prior subscription of Mr. Patterson.

" 5. That the Cresson & Coalport Railroad is not a competing line with the Altoona, Clearfield & Northern Railroad, nor are the Tyrone & Clearfield Railroad and the Pennsylvania Railroad competing lines with the Altoona & Philipsburg Connecting Railroad.

" 6. That the agreement or understanding or arrangement between F. G. Patterson and the Pennsylvania Railroad Company through S. M. Prevost for the transfer or assignment of the six hundred shares of stock or any other shares of stock to the Pennsylvania Railroad Company is not prohibited by the provisions of the constitution nor by any existing law."

Exceptions to the master's report were dismissed by the court, METZGER, P. J., of the 29th judicial district, specially presiding, delivering the following opinion :

" After carefully considering the evidence in this case, we are unable to discover any substantial error in the master's finding of the material facts. In this, as in all other cases where the master was also the examiner, before whom the testimony was taken, we feel that he is better qualified to judge of the credibility of the witnesses than the court, who has had no opportunity of hearing them deliver their testimony or of observing their manner on the witness stand. We are, however, satisfied from an examination of the testimony filed, that there was sufficient evidence to warrant the conclusion to which the master came.

" The principal question involved is the validity of F. G.

Patterson's claim to the ownership of six hundred shares of the capital stock of the Altoona, Clearfield & Northern Railroad Company.

" It appears that in the month of Sept., 1891, F. G. Patterson, who was then the president of the company, directed S. J. Westley, the treasurer, to note his subscription for six hundred shares of the capital stock of said company. Mr. Patterson was then acting as the agent of the company to secure a loan for it of sixty thousand dollars.

" This loan could not be secured without this subscription, as otherwise the indebtedness of the company would have been in excess of the amount of stock subscribed, which would have been in violation of the act of assembly of May 8, 1876. By making this subscription the loan was obtained, and the mortgage of the company to secure it given to the Pennsylvania Trust Company, of Reading, Pa., dated Oct. 1, 1891, which recited a resolution of the company passed Sept. 22, 1891, authorizing the increase of the indebtedness in said sum and the borrowing of an amount not to exceed the amount of the capital stock subscribed. The master finds as a fact that at the time of the special meeting of the stockholders, at which it was voted to increase the indebtedness of the company, and at or before the meeting of the board of directors held Oct. 1, 1891, at which authority was given the president and secretary of the company to execute and deliver a series of bonds and execute the mortgage for sixty thousand dollars, that both the stockholders and directors had knowledge of said subscription of F. G. Patterson.

" It is true, nothing was at this time paid on his subscription, but, subsequently, on the 6th day of January, 1893, he tendered the treasurer ten per cent thereof, which was refused by the treasurer, who alleged that the subscription was illegal. Subsequently, in February, 1893, Mr. Patterson tendered the entire amount of the subscription to the treasurer, which was also refused.

" This stock was part of the untaken, authorized capital stock of the company and not an increase of said stock. The entire authorized capital stock was fifteen hundred shares, and less than nine hundred shares had at this time been issued. The complainants contend that this subscription is void because not

in writing and not made in the manner prescribed by law.   It may be conceded, as a general rule, that a subscription for stock must, in order to bind the parties, be made in the prescribed form and must be in writing.   It does not follow, however, that an oral subscription may not, under certain circumstances, be binding.   Where, as in the case at hand, a subscription was made by an agent of the company for the purpose of obtaining from a third party a loan, and such subscription was recognized by the stockholders and directors of the company, who accepted the loan with a knowledge of such subscription, and, presumably, with a knowledge that without such subscription the loan would have been invalid and contrary to law, can it be said that either party under such circumstances would be permitted to deny the validity of such subscription, notwithstanding all the requisites prescribed had not been complied with ?   Having received the benefit of this subscription and taken advantage of it, the stockholders and directors of the company are estopped from denying or questioning it.   Their acts, if not such as to be an express ratification of the subscription, are at least such as to have that effect and prevent them from now questioning its validity in this or any other proceeding.   But it would seem that this subscription was as regular as some other subscriptions for stock of this company.   There was not at that time any regular subscription book kept in the office of the company or elsewhere.

" Persons were solicited to subscribe by stockholders, and sometimes upon agreeing verbally to take a certain number of shares, the same were issued.   Some of the stockholders had books in which to note subscriptions, but they were in no sense such subscription books as would be required to comply with all legal formalities.   We do not think it is necessary, in order to sustain the validity of Mr. Patterson's claim, to rely on the fact that a lawfully constituted board of directors, by resolution of Nov. 17, 1893, expressly ratified the subscription, for we have a sufficient ratification of it by the company without this.   This resolution, however, shows that a legally constituted board of directors of the company recognized the claim of Mr. Patterson, and that there is no disposition on the part of either Mr. Patterson or the company to avoid it.

" What standing in this case, then, have the complainants

who are seeking to nullify it? They, in common with the other stockholders, received the benefit and advantage of this subscription. At the time it was made and in effect ratified by the corporation and its stockholders, none of the complainants are shown to have offered or been willing to subscribe for this stock. No request was made by them for an allotment of it among the stockholders, and it appears it had been acquiesced in by them from October, 1891, until the 19th of October, 1893, a period of upwards of two years. Under such circumstances it is too late for them now to contend that this stock was unlawfully disposed of, because no allotment of it was made among the stockholders. If the stockholders were at any time entitled to an allotment, they have waived such right by their act, and their acquiescence in and recognition of Mr. Patterson's subscription. But it seems to us that the question of whether the stock should have been allotted among the stockholders, and they given an opportunity to subscribe for it in proportion to the shares of stock held by them, does not in any way affect the legality of the subscription of Mr. Patterson, and really does not arise in this case. There is nothing in any of the authorities cited by counsel which rules that, if no allotment is made giving all the corporators an opportunity to subscribe for untaken stock, that the subscription of any shareholder or other person would be illegal. They hold no more than that untaken stock is held by the corporation in trust for the corporators and must be disposed of for the benefit of all; that it cannot be disposed of unequally to the corporators, and if so disposed of each corporator injured may have his action against the corporation. There is no case that decides that any stockholder, after the stock has been disposed of, even if done by the corporation in violation of the rights of such stockholders, has any remedy in equity to compel the issue of such stock to him, or to have the subscription of the one who subscribed to this stock declared invalid. If injured, he has his remedy at law to recover damages for such injury. But, as was said in Curry v. Scott, 54 Pa. 276, it is a sufficient answer in this case to say that there is no averment in the bill that at the time Patterson subscribed for this stock that the complainants or any of them offered to take or were willing to take the stock at par, or that it would have sold for more. Without such

averment no injury can be shown to have been sustained by the complainants.

" For the reasons given we think the master did not err in finding that F. G. Patterson was legally entitled to this six hundred shares of stock.

" It follows, therefore, that the action of the de facto board of directors in attempting to cancel the certificates of stock issued to Patterson and in authorizing an allotment of this stock and issuing certificates for two hundred and eighty-seven shares of it was illegal.   The subscription of Mr. Patterson left but eleven shares of the authorized capital stock untaken.   But we have no doubt of the illegality of the action of the board of directors for other reasons.   This board, which has been termed the ' Langdon board,' was not a legal board of directors, and, as a de facto board of directors, it needs no argument to show that they could pass no resolution which could affect the Patterson stock, for, as we hold, his claim thereto was valid.   De facto officers of a corporation clearly have no right to do any act whereby any stockholder of the corporation would be prejudiced.   It is equally clear to our mind that they could not legally issue certificates for this two hundred and eighty-seven shares of stock.   ' Acts of officers de facto are not valid when such acts are for their own benefit, because they cannot take advantage of their own want of title, which they must be cognizant of.   It is only where it is for the benefit of strangers or the public, who are presumed to be ignorant of such defects of title, that their acts are good : ' Commissioners of Franklin v. Mc-Kissan, 2 Rawle, 140.   They cannot invoke the aid of their own acts as officers de facto to promote their own individual interests, hence the allotment of stock by the complainants to themselves was illegal, invalid and void, even if they had paid for it ; but the master finds as a fact that there was no value given for the stock allotted ; that they paid for it merely by an exchange of checks.   In our judgment they are neither legally nor equitably entitled to this stock, and we have no hesitancy in holding that the certificates for these two hundred and eighty-seven shares of stock are illegal and invalid.

" The question of the right of F. G. Patterson to sell his stock to the Pennsylvania Railroad Company, or to S. M. Prevost, general manager of said company, has been fully discussed by the master.

" It is alleged by the complainants that some of the leased lines of the Pennsylvania Railroad Company are parallel and competing with the line of the Altoona, Clearfield & Northern Railroad Company. The master has found that they were not parallel or competing, and we think he was fully warranted by the evidence in so finding. We might add that it is more than doubtful, however, whether this issue is properly raised by the pleadings in this case. There is no allegation in the bill that any of the leased lines of the Pennsylvania Railroad Company are parallel or competing with the said A., C. & N. R. R.

" Neither is it alleged nor shown how the complainants can be injured by the transfer of the stock. This bill being filed by private parties we can only consider their individual rights, and have nothing to do with the rights of the public. If the rights of the public are invaded, it can be remedied only by a bill filed by the attorney general in the name of the commonwealth.

" For the reasons given and others that might be given, we think the bill of the complainants in this case must be dismissed. The only remaining question is as to the form of the decree suggested by the master.

" It may be contended that as no relief is prayed for by the bill other than the granting of an injunction, and as no cross bill has been filed by the defendants, that no affirmative relief can be given the defendants other than that prayed for in the bill. This would seem to be the general rule, and is so laid down in Story's Equity Pleadings, 10th ed., note, bottom of page 352. But in this case, in view of the fact that it appears from the order of court made at the time the master was appointed, and from the testimony and the manner in which the case was presented by counsel on both sides, that it was the intention of the parties to determine in this proceeding the title of F. G. Patterson to the six hundred shares of stock, and also the legality of the certificates for the two hundred and eighty-seven shares of stock allotted or distributed by the de facto board of directors, and as the bill and answer squarely raised these issues we can see no harm in making such a decree as will settle these questions between the parties.

" Under the circumstances in this case, we feel that it is proper that we should decree that to be done which we find

clearly ought to be done to prevent further litigation and to effectually accomplish what was evidently intended by the parties in this case to be accomplished by this proceeding.

"And now, to wit, July 3, 1894, this case came on to be heard upon the report of the master and exceptions thereto, and after hearing the argument of counsel for the respective parties, and thereupon upon due consideration thereof the exceptions are dismissed and the report confirmed, and it is ordered, adjudged and decreed:

"1. That complainants' bill be dismissed with costs.

"2. That the treasurer of the Altoona, Clearfield & Northern Railroad Company be and is hereby directed to countersign the certificate for six hundred shares of stock issued by F. G. Patterson to himself on Feb. 23, 1893, upon his paying into the treasury of the company the sum of thirty thousand dollars ($30,000), being the par value of said six hundred shares of stock; or in lieu of countersigning such certificate, another to be issued, countersigned and delivered to F. G. Patterson for six hundred shares, upon payment by him of the said sum of thirty thousand dollars to the treasurer of said company, whereupon the title in F. G. Patterson shall in all respects and for all purposes become vested.

"3. That the certificates for the two hundred and eighty-seven shares of stock allotted or distributed by the de facto board of directors be canceled and the holders thereof be restrained from assigning, transferring or otherwise disposing of such shares to any other person or persons whomsoever."

*Error assigned* amongst others was decree as above, quoting it.

*David L. Krebs, H. M. Baldrige* with him, for appellants.— No agreement to take stock in a railroad corporation in this state is valid unless there is a memorandum in writing signed by the party, and ten per centum paid in money at the time the agreement is made: Pittsburg & Connellsville R. R. v. Thaw & Clarke, 29 Pa. 152 ; Pittsburg & Steubenville R. R. v. Gazzam, 32 Pa. 349; Morawetz on Corp., secs. 69 and 55; Vreeland v. N. J. Stone Co., 29 N. J. Eq. 188 ; Fanning v. Ins. Co., 37 Ohio, 339; Thames Tunnel Co. v. Sheldon, 6 B. & Cress. 341

Phœnix Warehousing Co. v. Badger, 67 N. Y. 294; act of April 4, 1868, sec. 4, P. L. 62; Hibernia Turnpike Co. v. Henderson, 8 S. & R. 217; Leighty v. Susquehanna & Waterford Turnpike Co., 14 S. & R. 434; Graff v. P. & S. R. R., 31 Pa. 489; Boyd v. Peach Bottom Ry., 90 Pa. 168; Bucher v. R. R., 76 Pa. 306; Garrett v. Dillsburg & Mechanicsburg R. R., 78 Pa. 465.

There can be no ratification by the board of directors and stockholders of the alleged agreement by Mr. Patterson to take the six hundred shares of stock under the facts found: 2 Morawetz on Corp. sec. 619; Taylor on Priv. Corp. sec. 292; 1 Am. & Eng. Ency. of Law, 430; Shisler v. Vandike, 92 Pa. 447; Seylar v. Carson, 69 Pa. 88; Supervisors v. Schenck, 5 Wall. (U. S.) 772; Marsh v. Fulton County, 10 Wall. 676; Crum's App., 66 Pa. 445; Moore v. Patterson, 28 Pa. 505.

No stockholders of the corporation can be estopped from questioning the alleged subscription, which is in direct violation of a statute and against public policy: Brightman v. Hicks, 108 Mass. 246; Langan v. Sankey, 55 Iowa, 52; Washabaugh v. Entriken, 36 Pa. 513; Miranville v. Silverthorn, 48 Pa. 147; Cuttle v. Brockway, 32 Pa. 45; Diller v. Brubaker, 52 Pa. 498; McKerrahan v. Crawford, 59 Pa. 390; Reel v. Elder, 62 Pa. 308; Salt Lake City v. Hollister, 118 U. S. 263; Bank v. Lauth, 143 Pa. 53; Pittsburg Melting Co. v. Reese, 118 Pa. 355; Millward-Cliff Cracker Co.'s Est., 116 Pa. 157; Reese v. Montgomery Bank, 31 Pa. 78; Wilson v. Montgomery Bank, 29 Pa. 537; Taylor on Private Corporations, sec. 569.

The Pennsylvania Railroad Company has no right directly or indirectly to purchase the stock of the A. C. & N. Railroad: Act of March 23, 1853, P. L. 219; act of April 11, 1859, P. L. 512; act of May 16, 1857, P. L. 519; act of May 20, 1857, P. L. 598; act of Feb. 17, 1871, P. L. 55; act of March 12, 1873, P. L. 253; Franklin Co. v. Lewiston Savings Inst., 68 Me. 43; Bank v. Wilcox et al., 24 Conn. 150; Morawetz on Corp. sec. 421; Pearson v. Concord R. R., 62 N. H. 537; Pierce on Railroads, sec. 505; act of April 23, 1861, P. L. 410.

A bill in equity may be maintained by a single stockholder to restrain acts ultra vires or acts contrary to public policy: Sandford v. R. R., 24 Pa. 378; Gratz v. Penna. R. R., 41 Pa. 447; Manderson v. Bank, 28 Pa. 279; Gamble v. Queens

County Water Co., 123 N. Y. 91; Francis Water Co. v. Pattee, 3 Am. R. R. & Corp. Cases, 558.

*Daniel J. Neff* and *Thomas H. Greevy, F. G. Patterson* with them, for appellees.—Having received the benefit of this subscription and taking advantage of it, the stockholders and directors of the company are estopped from denying or questioning it: Pittsburg & Connellsville R. R. v. Stewart, 41 Pa. 59; Langdon v. Patterson, 158 Pa. 476; Wood's Field on Corporations, secs. 147, 149 and 150; Angell & Ames, Cor. secs. 284 and 304; Addison on Contracts, sec. 60; Story on Agency, secs. 239, 244, 250, 253; Gulick v. Grover, 33 N. J. L. 463; Briden v. Debarry, 14 S. & R. 26; Gordon v. Preston, 1 W. 285; Bank of Penn'a v. Reed, 1 W. & S. 101; Kelsey v. National Bank of Crawford County, 69 Pa. 426.

It was not necessary that the subscription should be in writing. Under the circumstances of this case the oral subscription was valid: Cook on Stock and Stockholders, 52; P. W. & B. R. R. v. Cowell, 28 Pa. 329; Bates County v. Winters, 112 U. S. 325; Hibernia Turnpike Co., v. Henderson, 8 S. & R. 219; Boyd v. Peach Bottom R. R., 90 Pa. 168; Garrett v. Dillsburg & Mechanicsburg R. R., 78 Pa. 465.

Whenever an act done by an officer de facto has been declared to be valid, it is when some third person claims an interest or title in the act done, and there is no decision where such act has been considered valid in an action by the officer de facto claiming for an act done by himself: Riddle v. Bedford County, 7 S. & R. 392; Baird v. Bank of Washington, 11 S. & R. 415; Franklin County Commissioners v. McKissan, 2 R. 140; Cook on Stocks & Stockbrokers, 713; Taylor on Corporations, sec. 188; Zearfoss v. F. & M. Institute, 154 Pa. 454; Maganan & Brewer v. Freemont, 9 Lawyers' Rep. An. 790.

If Patterson owns the stock he has an undoubted right to dispose of it as he could dispose of any other property he owns. His right to transfer it to S. M. Prevost or any other person cannot be questioned: Gummere v. Lehigh Valley R. R., 1 Pa. Dist. Rep. 591; Kimball v. Atchison, T. & S. F. R. R., 46 Fed. Rep. 888.

PER CURIAM, May 6, 1895:

A careful consideration of this record has led us to the con-

clusion that there is no substantial error in the findings of the material facts, or in the conclusions drawn therefrom.  There does not appear to be anything in either of the questions involved that requires other or further consideration than is given thereto in the opinion of the learned president of the 29th judicial district, who specially presided at the hearing. The only modification of the decree that suggests itself to us as proper, is the addition to the second paragraph thereof, of the following words, viz: Provided that the said sum of thirty thousand dollars shall be paid within sixty days from the date of our decree.

As thus modified, the decree of the court below is affirmed on said opinion, and the appeal is dismissed with costs to be paid by the appellants.