## In re The African Methodist Episcopal Church of the City of Philadelphia, etc.

*Raymond Pace Alexander*, for petitioners.

*Needleman & Needleman,* for exceptants.

ALESSANDRONI, J., March 5, 1953. — This matter comes before the court on exceptions to the report of the master. The report recommends approval of all but one of the proposed amended amendments to the charter of the corporation. Both the proponents and the opponents filed exceptions to the recommendation.

The history of this corporation is an interesting one and is helpful in viewing the proposed amendments in their proper perspective. The corporation was created by an Act of the General Assembly of the Commonwealth, dated April 6, 1791. The articles of association were recorded October 15, 1796. Subsequently thereto the original articles of association were amended as follows: July 17, 1807, February 17, 1817, March 17, 1852, and August 17, 1875.

On April 4, 1951, the corporation filed its acceptance of the Constitution of Pennsylvania in accordance with

the provisions of the Act of May 5, 1933, P. L. 289, 15 PS §2851-53.

The corporation desires to change its name because it is the mother church of the African Methodist Episcopal Church. Also, it desires that it be further distinguished from the Board of Incorporators of the African Methodist Episcopal Church, which was incorporated in Philadelphia County, in Common Pleas Court No. 1, as of March term, 1936, no. 5177. Furthermore, the appellant corporation has been commonly known as "Bethel".

Steps were therefore taken to change the name of the corporation. It was also desired to admit female members of the church to membership. On March 5, 1951, at a special meeting of the membership of the corporation these amendments were approved. The material changes were: The name of the corporation, and the composition of the membership, henceforth, female members of the church would be eligible for membership in the corporation. A petition for approval of these amendments was filed on May 29, 1951. Exceptions to this petition were filed by Brinson; the matter was referred to the master for hearing and recommendation.

On October 16, 1951, a petition for leave to file amended amendments was granted by the court. The petition recited that a special meeting was called for August 20, 1951, to determine the question of legality of the amendments and the meeting at which they were approved, and for the election of officers. The amended amendments included several additional changes, the most material of which, apart from the name of the corporation and the right of females to hold membership, were: A change in the composition of board of trustees; officers entitled to vote as members of the board; president to preside and entitled to vote as mem-

ber of the board on all questions; nomination procedure; persons entitled to be present at meetings.

The affidavit to the petition was taken by counsel for the corporation. The petition for leave to file amended amendments had a variance as to the date of the meeting approving the original amendments; the petition stated that the original amendments were approved on October 16, 1950, instead of May 5, 1951. However, inasmuch as exceptants have indicated that they have no objection to these amendments, we will proceed on the premise that one if not both meetings were regular and proper.

One of the exceptions to the original amendments merits discussion, that objecting to female membership in the corporation. Exceptants have argued that the women members of the church were entitled to vote on the proposed amendment granting them the right of membership. The failure to allow them to vote nullifies the proposed amendment. This argument is based on the provision of the Act of May 5, 1933, P. L. 289, as amended, 15 PS §2851-702. The statute provides that if a proposed amendment would affect the rights of a class of members, they are entitled to vote on that amendment whether or not they are normally entitled to vote. Obviously this section is inapplicable where membership is limited to male members of the church over 21 years of age. In order to qualify for a vote under the statute cited above, one would have to be at the very least a nonvoting member. If one is not a member at all, one is not a nonvoting member. Any further discussion would merely belabor the point.

We pass over the exceptions that deal with noncompliance with the advertising requirements of the Act of May 5, 1933, P. L. 289, 15 PS §2851-706. Under the circumstances of this case the advertising must be considered to have been adequate and in accordance with the statute. Exceptants argued that the proposed

amended amendments were not presented to the court on the date specified in the advertisements. Here, clearly such was mere form and not substance.

At the same time although we also pass over the exception dealing with the retaining of Raymond Pace Alexander, as counsel for applicant, it must be stated that there is a grave doubt as to his authority to represent the corporation without the filing of his warrant of attorney. Also, exceptants should have proceeded by a rule on Mr. Alexander to show cause why he should not file his warrant of attorney. However, as will be indicated hereinafter, a decision on this question is unnecessary because of the conclusion reached on the merits.

Exceptants challenge the legality of the meeting of August 20, 1951. We think the master erred in his conclusion that this meeting was legal and the amendments regularly approved by the membership. The meeting was called by S. W. Williams, president of the corporation, upon receipt of a petition with the required number of signatures. On the surface this was in accordance with the bylaws of the corporation; however, the flaw in this procedure was the fact that Williams was not the president at the time the meeting was called and hence lacked authority to call a meeting.

Williams had been elected president at an election held April 2, 1951. Two members of the corporation instituted an action in quo warranto challenging the mode of the nomination and the rights of the balloting. Judgment was taken by plaintiffs on June 28, 1951. Although defendants appealed to the Superior Court, it does not appear from the record that the appeal acted as a supersedeas. Applicants urge that Williams was a de facto officer and was therefore entitled to act under color of right until his successor was elected.

The master in accepting this contention erroneously concluded that the Act of May 5, 1933, P. L. 289, 15 PS §2851-501, dealing with members of the board of directors and their terms of office, substantiated that position, that is, that members of the board serve until their successors are chosen. This section deals with members of the board, not officers. 15 PS §2851-504 provides that in the absence of a provision in the by-laws, the board of directors shall have the power to fill any vacancies in any office. The amendments to the charter of the corporation, dated July 28, 1875, gave the board of trustees power to elect one of their own members to act as president pro tempore in the case of sickness or absence of the president. The charter was silent as to the power of the board of trustees to fill a vacancy in the office of president. Therefore, absent any controlling provision in the charter or bylaws the present statute controls since the corporation filed its acceptance of the Constitution of 1874.

As between a corporation and its officers there can be no de facto officers. The term de facto officer is used to describe one who, although not properly an officer, acts under color of right and is deemed to be an officer to prevent injury to the rights of innocent third parties: Shellenberger v. Patterson, 168 Pa. 30. Pro-ponents argue that a corporation must have officers to function. However, both the charter and the statute provide that the board is vested with complete power over corporate affairs. This completely eliminates the assumption that a corporation must have officers, and that unless this removed president is held to be de facto the president, the corporation cannot function. Since the board has exclusive power over the affairs of the corporation by the term of the charter, and under the controlling statute, it had the authority to fill the office of president. As the board of trustees failed to act

Williams' status was nothing more than that of an interloper.

The meeting having been illegally called, its acts are a nullity. There is strong evidence that the progress of the meeting was controlled by outsiders. The master correctly concluded that the method of nominating the officers proposed by the amended amendments was a harmful one. However, since we have concluded after a thorough consideration of the record before us that the meeting of August 21, 1951 was illegal, we do not have to pass on the merits of the amended amendments.

### Order

And now, to wit, March 5, 1953, the exceptions of the opponents of the amended amendments to the recommendation of the master are sustained; the exception of the proponents to the master's recommendation is dismissed. The exceptions to the original amendments are dismissed.

It is further ordered that the amendments filed May 29, 1951, be and are hereby approved.