### JOHN S. MECLEARY,

#### *vs.*

JOHN S. MECLEARY, INCORPORATED, a corporation of the State of
Delaware, JOHN A. EVANS, SPENCER. T. LYNCH, WILLIAM
J. LAMBERT, JOSEPH E. SCHEULE, JAMES M. BRITTAIN
and WALTER J. GILL.

*New Castle, Jan. 22, 1923.*

Under *General Corporation Law*, § 9, requiring that the business of corpor-
ations be managed by a board of not less than three directors; a majority of
whom shall constitute a *quorum*, four directors of a corporation having a board
of nine did not constitute a *quorum*, and hence could not elect a director to fill
one of two vacancies, though a by-law provided that, if the office of one, or
more directors became vacant, the remaining directors should elect a successor,
whether or not *Section* 30, providing that any vacancy in the board shall be
filled by it, unless otherwise provided in the by-laws, conveys authority to
place such power, when taken away from the board, in others than the stock-
holders; there being still a full statutory *quorum* of the board in office.

Under by-laws providing that if the office of one or more directors became
vacant "the remaining directors" shall elect a successor, and that all vacancies
shall be filled by "the remainder (although less than a *quorum*) of the board of
directors," the "remaining directors" meet as a board for such purpose as
contemplated by *General Corporation Law*, § 30, requiring that any vacancy in
the board be filled by it, unless otherwise provided in the by-laws, and not as
individuals distinct from the board, just as the statute, in imposing duties or
conferring powers on the "directors," rather than in terms on the "board of
directors" (*Section* 10, 12, 14, 21), contemplates that the directors shall act
only in their capacity as members of the board.

Four directors, electing a fifth person to fill one of two vacancies in a board of nine, *held* without power, at a meeting participated in by the five, to authorize a sale and issuance of additional shares of stock; no *quorum* of the board being present.

Injunction Bill. The injunction which the bill seeks concerns certain shares of stock of the corporation defendant, claimed to be owned by the individual defendants, Brittain, Scheule and Lambert. Complainant asks the court to restrain the corporation, its officers and directors from issuing the shares of stock mentioned to the defendants, Brittain, Scheule and Lambert; and to restrain the indiviudal defendants named from voting any of said shares of stock sought to be issued to them at the next or any ensuing meeting of the stockholders of the defendant corporation and from selling, assigning or transferring any of said shares to any other person, firm or corporation.

The corporation in question has a board of directors consisting of nine persons. A short time prior to the regular meeting of the board on December 18, 1922, two of the members of the board, having sold their stock, resigned. At the meeting of the board called for that day, only four members attended, to-wit, the individual defendants Evans, Lynch, Lambert and Scheule. The complainant was a member of the board and he, together with two other members, either neglected or refused to attend.

The four members of the board undertook to proceed with the business of the board. They accepted the resignations of the two directors who had resigned, and proceeded to fill one of the vacancies thus occasioned by electing thereto one Walter J. Gill. Immediately upon being elected, Gill entered the meeting and acted as a director. Thereupon, the five persons present assumed to authorize the sale of more stock of the corporation. As a result of the action then taken, sixty shares of preferred stock were authorized to be sold to Brittain, seven shares of preferred stock to Scheule and three shares of preferred stock to Lambert. These are the shares of stock involved in this suit.

Complainant, who was and is the president of the corporation, refused to sign stock certificates for the above shares of stock. It appears, however, that certificates have been issued to each of the three persons named, purporting to evidence the ownership of

the shares of stock mentioned, and that the certificates are signed by the defendant Lambert, who acted in that behalf as president *pro tempore* of the corporation.

The corporation has an authorized capital stock of one hundred thousand dollars divided into five hundred shares of common stock of the par value of one hundred dollars each each and five hundred shares of perferred stock of the par value of one hundred dollars each. The preferred stock, as well as the common stock, enjoys the right to vote.

The cause came on to be heard on bill and affidavits at the return of a rule to show cause why a preliminary injunction should not issue.

*Caleb S. Layton*, of the firm of Marvel, Marvel, Layton & Hughes, for the complainant.

*Charles F. Curley*, of the firm of Saulsbury & Curley, for the defendants.

THE CHANCELLOR. The complainant seeks to enjoin the voting of seventy shares of stock claimed to be held by the defendants Brittain, Scheule and Lambert. He also seeks to enjoin the corporation from issuing the said stock to the said three defendants. This is on the theory that the certificates which Lambert as president *pro tempore* assumed to sign, do not constitute legal evidence of the fact of the issuance and ownership of the shares in question. The complainant further seeks to restrain the sale and transfer of the disputed shares by the three defendants who claim to own them to any other persons, firm or corporation.

The bill seeks also other relief, but the present rule does not occasion consideration of anything beyond the foregoing.

The attack which the complainant makes against the propriety of the issuance of the seventy shares of stock to Brittain, Lambert and Scheule, is based on three contentions, viz.: (a) That the alleged meeting of the board of directors on December 18, 1922, at which action was assumed to be taken authorizing the issuance of the additional shares, was illegal because there was no lawful *quorum* present for the transaction of corporate business; (b) because, if it be granted that the meeting was legally held, yet the additional shares should not have been disposed of to

Brittain, Lambert and Scheule without first having been offered to the existing stockholders for *pro rata* subscription; and (c) the real purpose of the pretended issue of additional stock was a fraud on the other stockholders, irrespective of their pre-emptive right to subscribe to stock, because the purpose of the issue was to give control of the approaching annual stockholders' meeting to the three directors and their associates, and thereby to fix them in control of the corporation and its affairs.

The view which I take of the point above designated as (a) makes it unnecessary for me to give consideration to the other two.

I am clearly of the opinion that all the proceedings taken at the alleged meeting of the board of directors on December 18, 1922, were illegal, because there was no *quorum* of the board present at the meeting authorized to transact business for the corporation.

The *General Corporation Law* of this state, in *Section* 6 (*Revised Code* 1915, *Paragraph* 1923), provides, *inter alia*, as follows

"The business of every corporation organized under the provisions of this chapter shall be managed by a board of not less than three directors, * * * they shall hold office until their successors are respectively elected and qualified; and a *majority of them shall constitute a quorum* for the transaction of business," etc.

The corporation with which the court is here concerned had a board of directors consisting of nine persons. At the time of the meeting of December 18, 1922, the board had been depleted by two resignations. On that day, therefore, there were only seven directors in office. But there was a *quorum* in office. The *quorum*, in that situation, consisted of five members, just as though there were no vacancies. *Bruch v. National Guaranty Credit Co.*, *ante p.* 180, 116 *Atl.* 738. Thus under the authority of the case just cited, the four directors who met on December 18, 1922, did not constitute a sufficient number to make a *quorum*. Their act, therefore, in filling one of the vacancies by electing Walter J. Gill a director cannot be regarded as lawfully done, unless something further appears which as a matter of law will support as valid that which otherwise appears to be nugatory.

The defendants contend that such support is to be found in the General Corporation Law and in the by-laws of this corporation.

The provision of the General Corporation Law, to which reference is made, is found in *Section* 30 (*Revised Code* 1915, *Paragraph* 1944), as follows:

"Any vacancy in the board of directors shall be filled by the board, unless otherwise provided in the by-laws, " etc.

One of the provisions of the by-laws to which reference is made is as follows:

"*Section* 4 (a).  If the office of one or more directors shall become vacant, the remaining directors shall elect a successor for the unexpired term."

The defendants contend that the provision of the statute found in *Section* 30, authorizes the corporation to provide in its by-laws that vacancies in the board of directors may be filled in a way other than by the board of directors, and that the by-law above quoted undertakes to provide for such other way by directing that such vacancies shall be filled, not by the board, but by the "remaining directors."  If the vacanies are to be filled by the board then I understand the solicitor for the defendants to concede that before this particular board could fill a vacancy at least five directors would be required to be in attendance, such being the lawful *quorum* of a board of nine.  But, inasmuch as the by-law places the duty of filling the vacancy upon the "remaining directors," the contention is that, there being no statutory provision for a *quorum* of "remaining directors," only a majority of such remaining directors need attend in order to make a quorum for the transaction of the business entrusted to them by the by-laws, to-wit, the business of electing to vacancies.  If this be so, then of course, the four directors had the power to elect Gill to one of the vacancies, and as soon as Gill joined the meeting there was a *quorum* of the board present for the transaction of corporate business, and the subsequent proceedings with respect to the stock were lawful.

The complainant, taking issue with this contention, denies that when *Section* 30 of the act confers power on the board to fill vacancies "unless otherwise provided in the by-laws," it is to be understood as conveying general authority to the corporation to make by-laws providing for the filling of vacancies other than by the board, and that the most that the language permits is to allow

the corporation to provide in its by-laws that the power to fill such vacancies may be taken away from the board, where the statute places it in the absence of other provision; but that when so taken away, it can be reposed by the by-laws only in the stockholders where the right to select directors naturally and generally belongs, and cannot be reposed elsewhere. If this be so, then in no case is it in the power of a corporation organized under the general law of this state to provide in its by-laws that vacancies in the board of directors may be filled by the directors remaining in office, when the number so remaining is less than a majority of the whole board. That is, the usual provision found in corporate by-laws of corporations of this state to the effect that even though the board be reduced in number below the *quorum* specified by the statute vacancies may nevertheless be filled would be invalid. This is what the construction of the statute contended for by the complainant would lead to. And so the complainant, following the logical deductions from his construction of the statute, asserts that this court was in error in *Bruch v. National Guarantee Credit Co., supra,* when it said that the directors remaining in office (less than a *quorum* in number in that case) could have filled the vacancies.

The contentions of the parties with respect to the proper meaning to be attributed to *Section* 30 of the statute, raise an interesting question. I am not, however, called upon by the facts presented by the instant case to pass upon it. Nor did the facts in the *Bruch Case* make it necessary for me to pass upon it. The language of that case which speaks of the power of the directors remaining in office to fill the vacancies was, therefore, dictum. In that case, the remaining members of the board did not attempt to fill the vacancies. Whether such attempt, if it had been made, would have been valid, was therefore not involved in the case. And in the instant case, there is a *quorum* of the board still in office. Therefore, it is in no wise necessary to a decision of the question here presented to consider what would be the result if less than a *quorum* were in office and attempted to fill the vacancies.

The question here presented is whether under the statute of the state and the by-laws of this corporation, a meeting of the directors at which only a minority of the board attended, may pro-

ceed to fill vacancies in the board, there being at the time a full statutory *quorum* of the board in office? I think not.

The defendants lay too much streess upon the language of the by-law—"remaining directors"—as indicating some body or some group of individuals, distinct from the board of directors, whose duty it is to fill vacancies. There would be just as much reason to contend that when the General Corporation Act itself imposes duties, or confers powers, upon the "directors" rather than in terms upon the "board of directors" (*Revised Code*, 1915, *Paragraph* 1924; § 10; 1926, § 12; 1928, § 14; 1935, § 21), the directors may act in a capacity other than as members of the board, free from the requirements as to *quorum* and notice of meetings. When the by-law of this corporation provides that the remaining directors may fill vacancies, I shall assume, unless something to the contrary plainly appears, that it was the intention of the corporation that the remaining directors were still to be regarded as functioning as the board. Rather than finding anything in the facts of this case thus plainly appearing to the contrary, I find something in another by-law which plainly indicates that when the remaining directors meet to fill a vacancy, they are to be regarded as meeting as a board. I refer to *Paragraph* 16 (a) of the by-laws, where the following is found:

"All vacancies in the board shall be filled by the remainder (although less than a quorum) of the board of directors."

Why the corporation should have thus legislated upon the subject of vacancies in the board of directors at two places in its by-laws, I do not know. The by-laws in their entirety are not before me. I have only excerpts therefrom supplied by the affidavit of the secretary of the company, one of the defendants. It is apparent from *Paragraph* 16 (a) of the by-laws, that the law-making body of this corporation intended the "remaining directors" to be the "remainder of the board of directors," which, of course, is in substance exactly what the statute in *Section* 30 means when it provides that vacancies are to be filled by the board. Whether the language of the by-law, "although less than a *quorum*," can be allowed any validity, is, as before indicated, not a question calling for decision in this case.

The. discussion of that branch of the case which is presented by the point under consideration, has dealt solely with the question of the power of the four directors (constituting a minority of the full board of nine) to fill one of the vacancies on the board by electing Gill thereto. The disposition of this point has been made to turn solely on the construction of the statute and by-laws. No other considerations have been presented by the parties. I am very clear that the four members were entirely without authority to do what they attempted to do. Gill was not lawfully elected to the office of director. Therefore, there was no *quorum* of the board present when it was sought to sell and issue more stock, and there was as a consequence no corporate authorization underlying the sale and issuance of the additional shares. This being so, the preliminary injunction will issue as prayed for.

An order will be entered acordingly.