In the Matter of CHELSEA EXCHANGE CORPORATION, a corporation of the State of Delaware.

*New Castle, Feb. 8, 1932.*

*Christopher L. Ward, Jr.*, of the firm of Marvel, Morford, Ward & Logan, and *David Brady*, of New York City, for petitioner.

*Hugh M. Morris* and *William Gresser*, of the firm of Gresser, Starr & Walker, of New York City, for respondents Traver, Pratt and Windhorst.

THE CHANCELLOR: It is conceded that the board of directors of this corporation is composed of nine. A majority constitutes a quorum. Nine members were elected by the stockholders at their annual meeting on March 19, 1931. Two directors resigned prior to October 15, 1931. On that day, two of the remaining seven directors assumed to elect Pratt and Traver to the vacancies, and thereupon adjourned the meeting to October 19, 1931. At the meeting on the nineteenth, four of the original nine, including Specht, were present as also were Pratt and Traver. The minutes of the meeting of the fifteenth were read and approved. Specht is claimed by the appearing respondents to have resigned before the meeting adjourned. This, the petitioner denies. On November 19, 1931, six of the original nine were present at a regularly convened meeting. So also were Pratt and Traver. Nominations were made to fill one vacancy. Windhorst received five votes (including those of Pratt and Traver) and Noonan three. The petitioner contends that Pratt and Traver were not lawful di-

rectors and hence their votes should be disregarded. If the petitioner is correct in his contention, then there was a tie and Windhorst was not elected. If, on the other hand, Pratt and Traver were directors, Windhorst was properly elected, provided Specht had resigned. Whether he had resigned is, as before stated, a disputed fact. That dispute of fact will be noticed hereafter and resolved. Specht continues to assert his right to be regarded as a director.

It will be seen that there are three offices of director in controversy and four persons involved.

As to two of the positions, the contest is between Pratt and Traver on the one hand and no one on the other.

As to the other position, the contest is between Specht on the one hand, who claims never to have resigned, and Windhorst on the other, who claims not only that Specht did resign, but also that he, Windhorst, was elected in his place. Of course if Specht did resign and Windhorst was not elected, then Specht's former place on the board continues vacant.

The convenience of discussion will be best served by treating the claims of Pratt and Traver together under one head, and that of Specht and Windhorst under another.

First, then, as to Pratt and Traver—were they lawfully elected to fill the two vacancies existing on October 15, 1931? *Section* 30 of the *General Act* (35 *Del. Laws, c.* 85, § 14) under which the corporation was created provides that vacancies in the board of directors "shall be filled by a majority of the remaining directors, though less than a quorum, unless it is otherwise provided in the Certificate of Incorporation or the by-laws." The by-laws provide (*Art. III, Section* 3) that vacancies "may be filled by the remaining director or directors, even though less than a quorum," etc. They further provide (*Art. III, Section* 7) that a majority of the whole board shall be necessary at all meetings to constitute a quorum for the transaction of business.

It is conceded that the action of the two directors on

October 15, 1931, in undertaking to elect Pratt and Traver to the existing vacancies was ineffective, there then being seven remaining directors in office. But the respondents contend that what took place at the adjourned meeting on October 19, 1931, when four of the remaining directors were present, was tantamount to a ratification of the action of the two directors on the fifteenth and that therefore Pratt and Traver became lawful incumbents of the vacancies by reason, not of a lawful election on the fifteenth, but of a lawful ratification on the nineteenth of the prior defective election on the fifteenth. They put their contention in another way when they say that, as the meeting of the nineteenth was an adjournment of the meeting of the fifteenth, the so-called election on the latter date was but a nomination of Pratt and Traver for the vacancies, and that the proceedings on the nineteenth were tantamount to an election of the nominees.

To this contention the petitioner makes two replies. The first is that, though a majority of the remaining directors was present on the nineteenth, yet that majority, being less than a quorum of the whole board, lacked the power to elect. *Mecleary v. John S. Mecleary, Inc., et al.,* 13 *Del. Ch.* 329, 119 *A.* 557, is cited in support of this contention. That case held that under the then existing state of the statutory law and in the light of the by-laws of the Mecleary Corporation, a majority of the remaining directors could not fill a vacancy if the total of the assembled directors numbered less than a quorum of the whole board, there being a quorum left in office. And so, it is argued, in the instant case, there being more than a quorum of the whole board left in office, there could be no lawful election to a vacancy unless at least a quorum of the whole board was assembled. If this argument be sound, it follows that the alleged election at the meeting of the nineteenth when four instead of the quorum number of five were assembled, was an unlawful election.

Since the *Mecleary Case* was decided, *Section* 30 which

deals *inter alia* with the election of directors to fill vacancies, has been materially changed. The change was enacted in 1927 and was inspired, I have no doubt, by a purpose to obviate the consequences of the decision in the *Mecleary Case*. When that case was decided *Section* 30 provided that any vacancy in the board of directors should be "filled by the board." Now and since 1927, the section provides that a "majority of the remaining directors, though less than a quorum," shall fill vacancies unless otherwise provided in the certificate of incorporation or the by-laws. The petitioner takes the view that this present language of the section means that a majority of the remaining directors, as distinguished from a majority of a quorum of the whole board, can function under the statutory power only when the board has been reduced below the quorum number. In other words the argument assumes that the phrase in the statute—though less than a quorum—means, provided no quorum is in existence. Applying that argument to the instant case, it would mean that if the board had been reduced to four, then the four could fill vacancies; but if the board had been reduced to five, then a meeting at which four only attended, could not elect.

I am unable to see upon what authority it would be permissible to read the statute as meaning what the petitioner contends. The language certainly is not indicative of a purpose to require that reduction of the board below the quorum point should be a condition precedent to the functioning of a "majority of the remaining directors." It seems to me to be quite otherwise. It means that a majority of the remaining directors may elect regardless of whether a quorum of the board is left in office or not. Such is the natural import of the language used. And such meaning furthermore is in harmony with what I conceive to have been the purpose of the legislature in adopting the present language of the section in 1927. That purpose was not only to meet the *Mecleary* decision, but also to settle the queries which that decision suggested. *Section* 9 of the statute

(*Revised Code* 1915, § 1923), (erroneously referred to in the *Mecleary Case* as *Section* 6) in which the quorum of the board was defined as a majority and the naming by *Section* 30 of the "board" as the body to fill vacancies, had controlling effect in the *Mecleary Case* upon its result. The by-laws were construed in the light of the statute as it then existed as not meaning, in the absence of a clear meaning to the contrary, to reject the "board" of the statute as the electing body and to substitute "remaining directors" therefor.

Now, however, the statute is changed. We have now "a majority of the remaining directors" named by the statute as the ones to elect to vacancies. The statute has substituted for the "board," with its statutory quorum rule, "remaining directors" who are to act by a majority. The premise from which the *Mecleary Case* started its discussion, is therefore gone. That case does not control this one.

Looking at the statute alone then, as it is now worded, the result is that if the four directors who met on October 19, 1931, did in substance elect Pratt and Traver, they exercised a lawful power, for they constituted a majority of the remaining directors, properly assembled after due notice to all.

Is there anything in the by-laws or certificate of incorporation which provides for an election to vacancies otherwise than as provided by the statute? I think not. The by-laws have already been described. Touching the matter of election to vacancies, the by-laws, instead of containing language seizable upon as setting up an electing body different from that set up by the statute, as was argued in the *Mecleary Case,* contain language indicative of a purpose to adopt the same electing body as does the statute, viz., the following, "remaining director or directors, even though less than a quorum." There is therefore no occasion to discuss the question debated in the *Mecleary Case* of whether the by-laws set up electing machinery at variance with

the statute. The certificate of incorporation contains no provisions touching vacancies.

So far then as the power is concerned of a majority of the remaining directors to elect on October 19, 1931, the conclusion is that they had such power.

The next question is, did they in fact exercise it? The only evidence that has been offered tending to show they did elect on the occasion of the nineteenth, is that at the outset of the meeting, the minutes of the previous meeting held on October 15, 1931, were read and approved. From this circumstance it is argued by the respondents that inasmuch as at that meeting directors were assumed to have been elected, though illegally, the action on the nineteenth of a lawful majority in approving the minutes of that meeting constituted a ratification by them of the unlawful election and thereby validated it. To support this argument it is necessary to accept the proposition that the mere approval of the minutes of a preceding meeting amounts to a ratification as valid of everything which the minutes disclose to have been done. That is a proposition which is not acceptable. As said in *Davis Mill Co. v. Bennett,* 39 *Mo. App.* 460, the approval of the minutes of a preceding meeting is simply the assertion that the secretary had properly recorded them and is not a legalizing of invalid acts recorded therein. In *Ohio Valley National Bank v. Walton Architectural Iron Co.,* 11 *Ohio Dec.* 904, 30 *Wkly. Law Bul.* 382, it was held that where the approval of an unauthorized act of an executive committee by the board of directors was void because the meeting of the board was illegal, the approval of the minutes of such meeting at a subsequent meeting is not an approval of such unauthorized act. The respondents cite *In re Portuguese Consolidated Copper Mines, Ltd.,* 45 *Ch. Div.* 16, in support of their contention that an approval of minutes constitutes a ratification of all acts recorded therein. If that case so holds, the point is not made clear. There appears from the report of the case to have been a perfectly good ratification of the

illegal act of two directors at a meeting held on January 7th. It was the minutes of that meeting which were read and approved at the later meeting on the sixteenth of the same month. There was therefore no illegality susceptible of ratification. If the case means to lay down as law the proposition that the approval of minutes of a previous meeting amounts to a validation of invalid acts done thereat, I cannot subscribe to it as a general proposition. *County Court v. Baltimore & O. R. Co., (C. C.)* 35 *F.* 161, also cited by the respondents does not support the proposition. Of course the reading and approval of minutes of a prior meeting may constitute notice to the lawfully convened board of what had been assumed to be done in behalf of the corporation and so enter as an element of estoppel in favor of third persons who dealt with the corporation on the faith of the validity of what the approved minutes show. We are here dealing, however, with a matter of internal government and as to such matters different principles are to be applied. *The Ashley Wire Co. v. Illinois Steel Co.,* 164 *Ill.* 149, 45 *N. E.* 410, 56 *Am. St. Rep.* 187. The English case before referred to found in 45 *Ch. Div.* may be differentiated from the instant one on that ground. Before concluding this aspect of the case it is to be observed that if the so-called election of Pratt and Traver on the fifteenth was not an election but only a nomination, as suggested by the respondents, then of course, even conceding the subsequent approval of the minutes to have amounted to a ratification of all they disclose, the extent of the ratification would have been of the nominations. It would not be contended that the approving of nominations was the equivalent of an election.

The conclusion with respect to Pratt and Traver is that they were never lawfully elected to the vacancies.

This brings us next to a consideration of the cases of Specht and Windhorst. The first question under this branch of the case is as to whether Specht resigned. If he resigned, he did so at the meeting of the board held on October 19,

1931. At that meeting six persons were present—four of the old directors, including Specht, and Pratt and Traver. The latter two, because of what has already been said, are not to be counted as directors. The minutes of that meeting relate that Specht stated orally that he was resigning as a director and confirmed it by letter (which he produced and which is set out in the minutes), and that his resignation was on motion accepted. Specht does not deny the letter. He explains, and it is so contended by the petitioner, that the letter, however, makes his resignation effective only upon acceptance by the board. There being no quorum of the board present at the meeting (with Pratt and Traver eliminated), it is argued the meeting was powerless to accept the resignation, and that hence he continued in office after October 19, 1931. I shall not quote the letter nor discuss the point of whether his resignation was as a matter of fact and law accepted at the October 19th meeting. Let the point be conceded in favor of Specht's continuance as a director, it will nevertheless appear from what follows that he is not now a director.

What follows has to do with another meeting of the board held on November 19th, 1931. At that meeting six of the old directors other than Specht were present. So also were Pratt and Traver; but they are to be eliminated as directors. There was, then, an undoubted quorum of six present on November 19th. The minutes show that the president announced that nominations were "in order for filling the vacancy in the Board of Directors."

Now a question arises at this point—what vacancy was referred to? The minutes call it *the* vacancy. At another point they show that the president spoke of it as *a* vacancy. The weight of the evidence shows that the president stated more than the minutes show. He stated that it was the vacancy caused by Specht's resignation. The presence of Pratt and Traver claiming to be directors in lieu of the two persons who had resigned prior to October 15, 1931, must have indicated that it was Specht's seat that was to be

filled, even if the president had not so stated. But I conclude that the president did make the explicit statement that Specht's vacancy was to be filled. The answer and the affidavits of the respondents so show, the affidavit of Specht himself so admits and the present petitioner, who was a director present at the meeting, so states in a certain petition that he filed in the Supreme Court in New York. I have no doubt whatever that all the six directors present understood that they were called upon to elect a director to succeed Specht. Two nominations were made. Windhorst was nominated by the anti-Brady faction; and Mr. Brady nominated his law partner, Noonan. A vote was taken. It stood five for Windhorst and three for Noonan. Pratt and Traver, though challenged, voted and their votes were cast and counted for Windhorst. Eliminating them, the lawful vote was three for Windhorst and three for Noonan. There was thus no election. As this election furnishes Windhorst his only claim to the office of director, it follows that his claim is invalid.

This leaves Specht to be disposed of. It has been conceded for the sake of the argument that his resignation was conditioned upon acceptance by the board. There was no formal acceptance of his resignation by the board at its November 19th meeting. But the act of all six of the lawful directors then in office, constituting as they did more than a quorum for the transaction of business, in balloting for his successor, is as positive evidence of their acceptance of his resignation as if they had formally resolved upon it. I conclude then that Specht is no longer a director.

Finally, what disposition is to be made of the respondent corporation's cross-petition praying for the removal of the petitioner Brady as a director on the ground of alleged hostility and unfaithfulness to the corporation, and for an injunction against his acting as a director?

Upon the question of the jurisdiction of this court to grant the sort of relief prayed for, whether by way of original or cross-petition, the respondents rely on *Section*

31 of the act. They take the view that the language of the second paragraph of that section is sufficiently broad to confer on the Chancellor the power to remove a director for such cause as is here alleged, notwithstanding he was regularly elected by the stockholders. I shall not pause to discuss this contention as to the scope of the section's grant of jurisdiction. It is not necessary to do so. It is sufficient to say that whatever jurisdiction the section confers can be invoked only on the application of a stockholder, and the cross-petitioners, whatever the true fact may be, do not allege themselves to be stockholders. One of them is the corporation itself.

But there is another reason ample in itself for denying the relief prayed for in the cross-petition. That is that the cross-petition sets up matter that is in no wise related or germane to the matters called in controversy by the original petition. *Allied Chemical & Dye Corp. v. Steele & Tube Co. of America,* 14 *Del. Ch.* 368, 127 *A.* 414; *Paine v. Sackett,* 25 *R. I.* 561, 57 *A.* 376; 1 *Whitehouse Eq. Practice,* 277; *Story's Equity Pleading* (10th Ed.) § 389. In *Krueger v. Ferry,* 41 *N. J. Eq.* 432, 5 *A.* 452, the rule is stated to be imperative "that the new facts sought to be introduced by it (cross-bill) must be so directly and closely connected with the cause of action set up in the original bill as to render the cross-suit a mere auxiliary of the original suit, or a graft or dependency upon it." It is an instrument devised to enable the court to do more complete justice to all the parties in respect to matter put in litigation by the original bill, than would be possible if the defendant stood on his answer alone.

The petitioner as a stockholder filed his petition seeking to have determined the titles of certain persons who claim to be directors of the corporation, under *Section* 31 of the *General Corporation Law* (35 *Del. Laws, c.* 85, § 15). The respondents are called upon to answer such a controversy. They do so, and then take the aggressive by filing a cross-petition which originates an entirely new matter, namely,

the fitness of the petitioner to continue in the office of director to which the stockholders had elected him. That Brady's unfitness to be a director because of his alleged hostility to the best interests of the corporation is so far unrelated to the questions put in controversy by the petition of the regularity of the titles to office of Pratt, Traver, Windhorst and Specht as to be totally distinct and foreign thereto, seems to me to be too plain to call for discussion. I therefore decline to enter upon a consideration of the law and facts presented by the prayers for cross-relief.

A decree will be entered denying the prayers for cross-relief, and declaring that neither Pratt, Traver, Windhorst nor Specht is entitled to be a director of the respondent corporation.