134 A.2d 518 (1957)
Joseph TOMLINSON, Plaintiff,
v.
LOEW'S Incorporated, a Delaware corporation, Louis B. Mayer and Samuel Briskin, Defendants,
Monroe Greenthal, Herman Scher, Leland Heath, Louis Marx, David Marx, Lewis Rothschild, Joe Robinson, Earl Carroll, Helen Schiff, Associated Prudential Theatres, Inc., Joseph Seider, Incorporated Investors, Harold Harris, Sol Wolff, Sol Wolff, Peggye Jane Elson, Guild Enterprises, Hans C. Hermanson, William Brenner, Mrs. Ester Dembow, Herbert Henryson, Arthur Rapf, Mrs. Ruth Friedman, Leopold Friedman, Archie Weltman, Esla Holding Corp., Eugene Picker, Isaac Picker, Isadore Altman, Sidney Phillips, Abe Caro, Salle Caro, Jack H. Levin, Morris Rubenstein, Elise A. Parker, William A. Parker, Samuel Wallach, Max Butchin, Hyman Schaiwitz, Tobias Gluck, Abram Rubin, Aaron Vulcan, Israel Kalish, Al Kelly, Michael Kletz, Louis Brandt, Mrs. Lottie Brandt, Mrs. Helen Brandt, Max Bardarnick, Max Minzescheimer, and Arthur Weisenberger, Leon Lowenstein, The Lowenstein Foundation, The Crest-Tex Corporation by Morris David, President, Marvin David, Hy Davis, Louis Berkley, Alan Berkley, Isadore Sloan, Fred Hazen, Sam Zacharia, Rose Drucker, and The Grinnell Pajamas Corporation, Intervening Defendants.
Court of Chancery of Delaware, New Castle.
August 26, 1957.
Reargument Denied August 29, 1957.
Judgment Affirmed October 12, 1957.
*519 Henry M. Canby (of Richards, Layton & Finger), Wilmington, for plaintiff.
Arthur G. Logan and Aubrey B. Lank (of Logan, Marvel, Boggs & Theisen), Wilmington, and Milton S. Pollack, New York City, for individual defendants and for Tomlinson faction claiming authority to represent the corporation.
David F. Anderson (of Berl, Potter & Anderson), Wilmington, and Louis Nizer (of Phillips, Nizer, Benjamin & Krim), New York City, and Benjamin Melniker, New York City, for Vogel faction claiming authority to represent the corporation.
Clair J. Killoran and Courtney H. Cummings, Jr. (of Killoran & VanBrunt), Wilmington, for interveners.
Judgment Affirmed October 12, 1957. See 135 A.2d 136.
SEITZ, Chancellor.
Plaintiff, Joseph Tomlinson, is a substantial stockholder of the corporate defendant, Loew's Incorporated ("Loew's" or "corporation"), a Delaware corporation. He filed this petition under 8 Del.C. § 225 seeking a judgment that the individual defendants, Louis B. Mayer and Samuel Briskin ("individual defendants") were validly elected directors of the corporation and rightfully hold such offices. The individual defendants filed an answer joining in the prayer of the petition.
The management of the corporation, using that term broadly, has split into two factions both of which claim to represent the corporation in this action. The plaintiff, Tomlinson, belongs to one faction which now consists of five directors while the other faction is headed by the President, Vogel, and now consists of four directors. Neither faction can muster a quorum (being 7) when the opposing faction does not appear. Both factions have purported to file answers for the corporation. The Tomlinson faction's answer for the corporation joins in the prayer requesting that the election of the two individual defendants as directors be declared valid. The Vogel faction's answer and cross-claim for the corporation seeks a determination that the individual defendants were not validly elected at the meeting in question and also seeks to enjoin plaintiff and the individual defendants from interfering with a stockholders' meeting called by Vogel for September 12, 1957, to fill, inter alia, the same director vacancies purportedly filled by the election of the individual defendants.
Since the determination of the question as to the right of the parties to file an answer on behalf of the corporation is in a sense dependent upon the answer to the question as to the validity of the election of the individual defendants as directors, the parties tacitly agreed not to present the *520 issue by attacking the authority of each faction to file the corporate answer.[1] Rather, the individual defendants and the corporate defendant as represented by the so-called Tomlinson faction moved for a summary judgment holding that the individual defendants were validly elected directors at the meeting of July 30, 1957. Thereafter the corporation as represented by the Vogel faction also moved for summary judgment holding that:
(a) The individual defendants were not validly elected directors;
(b) That the actions taken at the meeting of July 30 were invalid;
(c) That the plaintiff and individual defendants be enjoined from interfering with the stockholders' meeting called for September 12, 1957.
Certain stockholders were permitted to intervene to assert the position espoused by the Vogel faction. While the interveners did not file any motion of their own, they did file a brief giving reasons why they believe the Vogel faction's motion should be granted.
This then is the decision upon the motions for summary judgment filed by the individual defendants and by the corporation through its opposing factions. A limited factual narrative of this most unusual case may not be amiss.
This corporation has been beset with factional difficulties for some time. It has some 26,000 stockholders owning 5,400,000 shares. Its average gross receipts have been about $178,000,000 annually over the last ten years. As heretofore indicated, there are in essence two factions within the board which, for convenience, I have designated as the Tomlinson and Vogel factions. However, in so identifying them I do not intend to reflect adversely upon them.
These factions reached a compromise agreement in connection with the election of the directors at the annual meeting held last February. Under the compromise, each faction nominated six directors and they in turn selected a thirteenth or neutral director (Reid). The bylaws provide for thirteen directors of which seven constitute a quorum. The thirteen nominees were duly elected at the February meeting but the corporation's troubles had only begun. The board hired a management consultant firm (Robert Heller & Associates, Inc.) to look into the corporation's difficulties and the reports of that firm dealing with Vogel and the corporate affairs only added fuel to the smoldering factional fire. At first the firm orally suggested that Vogel be replaced as president, apparently in the interest of securing a cooperative board. Later this same firm, expressing full confidence in Vogel's ability, recommended that the board rather than Vogel be replaced and that the matter be resolved by submitting the issue to the stockholders. Incidentally, Vogel was only elected president in October 1956, although he has been with the corporation in various capacities for forty years.
At the July 12, 1957 directors' meeting an unsuccessful attempt was made by the Tomlinson faction to oust Vogel as President. This brought the factional feud into the open. Thereafter Vogel commenced making plans to call a stockholders' meeting. Then there is a sequence of events which are in some confusion and conflict in the record. Since they are not relevant to my decision I pass over them.
Sometime during the period July 17-18 two of the Vogel directors and the so-called thirteenth or neutral director Reid resigned, and in doing so suggested that a stockholders' meeting be called to resolve the difference of opinion on the board.
*521 On July 18, the Executive Committee noted that Pace and Reid had resigned and determined that it was in the best interest of the corporation to call a special stockholders' meeting to deal with the difficulty created by the absence of an effective majority of directors. Incidentally, at least seven of the original thirteen directors elected at the last annual meeting recommended or advised and approved the president's call for a special stockholders' meeting.
On July 19, 1957, Tomlinson and Johnson (a Tomlinson director) caused a letter to be delivered to the Secretary of the Corporation requesting that a special directors' meeting be called for July 30, 1957, for the following purposes:
1. To receive a report from Robert Heller & Associates, Inc., with respect to the affairs of the Company.
2. To consider the recommendations contained in the Heller report and to take such action thereon as the Board may determine to be desirable.
3. To consider whether a special meeting of the stockholders should be called.
4. To ascertain whether one or more vacancies exist on the Board of Directors, to consider whether any vacancies which exist should be filled by the vote of the stockholders or by the vote of the Directors, and in the event it is determined that the vacancies should be filled by vote of the directors, to fill the vacancies.
5. To consider and take action on such other matters that may come before the meeting.
The secretary sent the requested notice. On the day before the directors' meeting was held on July 30, Vogel caused a notice of a special meeting of stockholders to be mailed. It called for, inter alia, the election of directors to fill the director vacancies. About this time one of the Tomlinson directors also resigned, leaving nine in office.
At the time and place fixed for the directors' meeting only five directors appeared, all of the so-called Tomlinson faction. The petition charges and the answer, in effect, denies that the so-called remaining Vogel directors, being four in number, conspired to prevent the majority directors then in office from filling the four vacancies and from taking the other noticed action by not attending the meeting. Since only five directors were present there was no quorum (seven being a quorum under the by-laws). Nevertheless, the five directors present, receiving legal advice that they could do so, purported to elect the two individual defendants as directors to fill two of the vacancies. The two so elected immediately entered the meeting and the board then proceeded with other business on the assumption that there was a quorum present. This other business included the placing of restrictions upon the powers of the president and recalling the material filed by Vogel with the S.E.C.
The Vogel faction challenged the legality of the election of the two individual defendants as directors as well as the consequent action taken at the meeting and proceeded to ignore it. The plaintiff then filed this petition and the Court is thus confronted with the necessity of deciding the basic issue: Were the individual defendants validly elected directors at the meeting of July 30, 1957?
The Vogel group contends that under the Loew's by-laws, as properly construed, director vacancies can only be filled by the majority of directors at a meeting having a quorum in attendance, if there be a quorum in office. This being so the corporation's by-laws "otherwise provide" as the statute permits and are controlling. Since there was a quorum in office but not in attendance at the July 30 meeting, the Vogel group concludes that the individual defendants were not validly elected.
*522 The Tomlinson group denies that the by-laws are at variance with the statute  thus the issue.
8 Del.C. § 223, provides, inter alia, that vacancies on the board "may be filled by a majority of the directors then in office, though less than a quorum, unless it is otherwise provided in the certificate of incorporation or the by-laws". This feature of the statute was construed by the Chancellor in the case of In re Chelsea Exchange Corp., 18 Del.Ch. 287, 159 A. 432, to mean that a majority of the remaining directors in office, whether or not they constituted a quorum, could fill the vacancies unless otherwise provided in the certificate or by-laws
The Vogel group contends that the later Supreme Court of Delaware case of Blish v. Thompson Automatic Arms Corp., 30 Del.Ch. 538, 64 A.2d 581, while not saying so, necessarily overruled the Chelsea opinion of the Chancellor. Because, inter alia, it did not mention the statute or the Chelsea case, I shall assume without deciding that the Court in the Blish case did not intend to overrule the Chelsea case and that it is still an authoritative construction of what is now 8 Del.C. § 223.
Since a majority of directors in office voted at the directors' meeting of July 30, 1957, to fill two vacancies it follows that, assuming they were all qualified to vote, they were authorized by the statute to take such action unless Loew's by-laws otherwise provided, there being no pertinent charter provision. The Vogel group contends that Loew's by-laws do otherwise provide. They contend that under the corporation's by-laws, when there is a quorum of directors in office, a director vacancy can be filled only by a majority at a meeting of directors at which a quorum is present. They concede that the by-laws provide that a majority of the directors, though less than a quorum, can fill vacancies where there is no quorum of directors in office. The interveners on behalf of the Vogel faction go further and say that in such a case under the by-laws the director action must be unanimous. However, we are here dealing with a case where there was admittedly a quorum of directors in office and so the vote required by the Loew's by-laws in a situation where there is no quorum in office need not be determined.
I return to the question as to whether the corporation's by-laws otherwise provide. The argument of the Tomlinson group is relatively simple. They say that 8 Del.C. § 223, as construed in the Chelsea case, authorizes the majority of directors to fill vacancies whether or not they constitute a quorum. In other words they say that the statute constitutes a special quorum rule in all director vacancy cases which is controlling unless the charter and by-laws otherwise provide. They then say that the by-laws do not otherwise provide and therefore the statutory rule is applicable. The Vogel group and the interveners take a contrary position as to the proper construction of the by-laws.
The by-laws of the corporation were adopted in 1919 and it is tacitly agreed that for our purposes they have not been changed since that date. I now consider the pertinent provisions. The first is found in Article II, entitled, "Directors". Section 5 of Article II, entitled, "Number of Directors and Quorum", provides that "seven (7) of the directors shall constitute a quorum for the transaction of business, and the act of a majority of directors present at a meeting in the presence of a quorum, shall constitute the act of the Board of Directors * * *". Section 8, of Article II, enumerates some 14 specified powers granted "the directors" and number (14) grants power to the directors "to fill vacancies in the Board of Directors".
The Tomlinson group points out that in § 7 of Article II certain general powers are bestowed upon the "Board of Directors", whereas in Article II, § 8, granting the specified powers, (including the filling of vacancies) only the words, "the directors" are used. From this the Tomlinson group *523 argues that the words, "the directors" in § 8 does not govern how many must act because it refers to "the directors" and not to the "Board of Directors". An analysis of Article II reveals there is no merit to the distinction sought to be drawn and that the words "the directors" used in § 8 were intended to be the equivalent of "the Board of Directors" as used in § 7. Thus, the introductory language of § 8 says, "without prejudice to such general powers [those conferred on "The Board of Directors" by § 7] * * * the directors shall have the following powers * * *". It is clear from this language that the by-law language was designed to confer the specified powers upon the same group as was granted the general powers by the preceding section; viz., the board.
Further examination of Article II reveals that the distinction suggested by the Tomlinson faction is without merit. Thus, in Article II, § 8, there are some fourteen grants of power to the directors and an examination of them makes it evident that many of them are not of the types which ordinarily would be exercised except by the board of directors acting as a board. For example, the directors are granted such powers as the right to remove officers for cause, to fill vacancies in the office of president, etc. It is not believed that it would be reasonable to infer that it was intended that such powers should be exercised other than by board action.
I therefore conclude that Article II, § 8(14) was a grant of power to the Board of Directors to fill vacancies on the board. Since the quorum provision concerning board action is also a part of Article II and also because a board absent specific provision to the contrary can act (emergencies aside) only in the presence of a quorum, I have no hesitancy in concluding that the specified powers granted the directors in § 8 of Article II to fill vacancies was a grant of power to the board which could be exercised by it only in the presence of a quorum.
If this were the only corporate by-law, I am satisfied that it would meet the "otherwise provided" wording of 8 Del.C. § 223 and would control and prevent the filling of vacancies by the action of less than a majority of a quorum of directors.
But the Tomlinson group argues that Article V, § 2 of the by-laws is in substance the same as the statute and should therefore be construed as was the statute in the Chelsea case to permit the majority of directors in office to fill vacancies in the absence of a quorum although a quorum of directors is in office. Article V, entitled, inter alia, "Filling of Vacancies", provides in § 2 as follows:
"If the office of any member of a committee or of the President, a Vice-President, the Secretary, Treasurer or any other office or agent becomes vacant, the directors in office, although less than a quorum, may appoint any qualified person to fill such vacancy, who shall hold office for the unexpired term and until his successor shall be duly chosen. A vacancy in the Board of Directors may be filled by the stockholders or by the directors in office (although less than a quorum)."
If Article V, § 2 is to be construed as the Tomlinson group urges, it is evident that in a situation where there is a quorum of directors in office, it provides for a different rule than that provided by Article II, § 8. I say this because, Article V, § 2 would authorize a majority, absent a quorum, to fill vacancies although there was a quorum of directors in office, whereas, Article II, § 8 would authorize such action in such a situation only in the presence of a quorum. It may be noted that both by-laws are couched in terms of permissive grants of power.
I think all would agree that the Court should, if possible, construe these *524 by-laws touching the same area so as to give meaning to both of them, if reasonably possible, rather than assume that they duplicate one another in part or are at variance with one another. See 8 Fletcher, Cyc. of Corps. (Perm.Ed.) § 4195. This is particularly true where, as here, both by-laws were adopted at the same time. As the Vogel group suggests, both by-laws can be given meaning and effect if Article II, § 8 controls the procedure for filling director vacancies when there is a quorum of directors in office and if Article V, § 2 is applicable thereto when there is less than a quorum of directors in office.
It is certainly true that if Article V, § 2 is, as the Tomlinson group contends, applicable to a situation where there is a quorum of directors in office, then it is inconsistent with Article II, § 8 because it would in such a situation permit the majority in the absence of a quorum to fill vacancies whereas Article II, § 8, as I construe it, would permit the filling of vacancies only by a majority of a quorum. Moreover, as the interveners' counsel points out, if Article V, § 2, is construed to permit majority action to control in the absence of a quorum, even though a quorum is in office, then under § 2, they could also fill any vacancy in the corporate offices. Though once again this same power is by Article II, § 8, as I construe it, granted to the board acting in the presence of a quorum. This would mean that the Court would be saying that those adopting Article V, § 2 of the by-laws intended to authorize the majority of directors to fill any office at a meeting without a quorum although a quorum was in office. Such a construction would duplicate Article II, § 8(13). I cannot believe that this broad power was intended to be conferred upon less than a quorum when there is a quorum of directors in office. This power is particularly sweeping because, for example, once a president is elected, under the by-laws he can be removed by the directors only for cause.
The foregoing analysis would seem to suggest that, fairly construed, by-law Article V, § 2 was intended to apply only in the situation where there was less than a quorum of directors in office. This construction permits it to be reconciled with Article II, § 8 and gives independent meaning to both of them. Nor is this construction strained when we consider that under the construction of Article V, § 2 urged by the Tomlinson group, it would be possible for less than a quorum to take the important action of filling director vacancies though there was a quorum in office. Yet many much less important powers could only be exercised in the presence of a quorum under the by-laws.
The Tomlinson group contends that the language of Article V, § 2, is in substance the same as the statute and should be construed as was the statute in the Chelsea case. The Vogel group counters by pointing out that Loew's by-laws were adopted some eight years before the 1927 amendment to § 30, 35 Del.Laws, c. 85, § 14 (now 8 Del.C. § 223). That amendment applied to the Chelsea case because the Chelsea corporation was incorporated after the amendment. It provided that a "majority of the remaining directors, though less than a quorum" should fill vacancies unless otherwise provided in the certificate or by-laws. Prior to that amendment the statute had provided that vacancies in the board should be "filled by the Board". The Chancellor concluded in the Chelsea case that by the amendment it was provided "that a majority of the remaining directors may elect regardless of whether a quorum of the board is left in office or not". [18 Del.Ch. 287, 159 A. 434]
The by-law in the Chelsea case provided that vacancies "may be filled by the remaining director or directors, even though less than a quorum". Another by-law provided that a "majority of the whole board shall be necessary at all meetings to constitute a quorum for the transaction of business". The Chancellor concluded that the Chelsea by-law was "indicative of a purpose to adopt the same electing body as does the statute [1927 amendment]". He *525 therefore concluded that there was no occasion to discuss the question debated in Mecleary v. John S. Mecleary, Inc., 13 Del. Ch. 329, 119 A. 557, 559 (decided before the 1927 amendment), viz., whether the bylaws set up election machinery at variance with the statute. It may be noted that there was only one by-law in the Chelsea case dealing with the filling of director vacancies while there were two in the Mecleary case and there are two in the Loew's case to be reconciled if possible.
Since Loew's was incorporated and its present by-laws adopted before the 1927 amendment, which was considered in the Chelsea case, and since the applicable law prior to the amendment is set forth in the Mecleary case, it is of interest to see what that case decided. The Mecleary corporation had a board of nine with two vacancies and a quorum requirement of five. Thus there was a quorum in office. At a board meeting attended by four the directors purported to elect a director to fill one of the vacancies. The issue was whether the vacancy was validly filled. At that time (about 1922) § 30, now § 223, then read:
"any vacancy in the Board of Directors shall be filled by the Board, unless otherwise provided in the Bylaws * * *". Code 1915, § 1944.
The opinion shows that the corporation had two pertinent by-laws. The first provided that, "if the office of one or more [of the] directors shall become vacant, the remaining directors shall elect a successor for the unexpired term". The other by-law provided that, "all vacancies in the board shall be filled by the remainder (although less than a quorum) of the board of directors".
In the Mecleary case the Chancellor apparently assumed that the two by-laws were duplications. He construed them to call for quorum action where a quorum was in office. He thus construed them both to be the equivalent of the then controlling statute. He construed the words "remaining directors" in one of the by-laws to refer to the board of directors. He based his construction almost entirely on two grounds: (1) certain statutory usuage of the word "directors" to mean "board of directors", and (2) the by-law (paragraph 16(a)) which referred to the remainder of the "board of directors".
The Chancellor thus construed a by-law provision similar to that in the Chelsea case as calling for quorum action. The decisions were of course consistent because in the Chelsea case he had only the statute and an equivalent by-law, adopted after the statute. But in the Mecleary case he had a quorum enforcing statute and two by-laws  one of which clearly contemplated action by the board  as does Loew's.
Moreover, in one respect the language of one of the by-laws in the Mecleary case was less compelling than the Loew's by-law because it spoke of "the remainder" while the Loew's by-law relied upon by the Tomlinson faction merely speaks of "the directors in office". It would therefore seem that had this issue come before the Chancellor after the Mecleary decision and before the 1927 amendment he would have had even more reason to conclude that Article V, § 2 was intended to provide for quorum action where a quorum was in existence.
It must be emphasized that the Loew's by-laws were adopted in 1919 and in reaching its construction this Court must look at the then existing statute and governing case law. I do not believe that the construction of the by-laws should be flavored by the 1927 amendment which played such an important part in the Chancellor's construction of the by-law in the Chelsea case. The date of adoption and the content of Loew's by-laws make the Chelsea case inapplicable.
As heretofore noted, the Chancellor appeared to assume in the Mecleary case that the two by-laws there involved which referred to the filling of vacancies were *526 merely duplications. They perhaps could have been reconciled in the manner I have here decided with respect to the two by-law provisions of Loew's.
But even if my construction of Article V, § 2 is contrary to Mecleary, I am persuaded that the alternative construction permitted by Mecleary would require the by-laws to be construed to require quorum action when a quorum was in office. This construction would also be at variance with 8 Del.C. § 223 and would govern, and of course would also invalidate action taken by less than a majority of a quorum. It would then duplicate the requirement of Article II, § 8.
I therefore conclude that the Loew's by-law, Article II, § 8, must be construed to require quorum action to fill director vacancies when a quorum of directors is in office. I further conclude that by-law, Article V, § 2 must be construed to apply to a situation where there is no quorum in office. If this construction of Article V, § 2 is incorrect then I think the alternative construction would be that it was intended to require quorum action when a quorum was in office. Loew's by-laws are therefore at variance with the rule set forth in 8 Del.C. § 223. It follows that under the statute the by-laws provision must control.
Thus, seven directors had to be in attendance in order to properly elect the individual defendants as directors unless, as the Tomlinson group contends, the four so-called Vogel directors who stayed away from the meeting to prevent the creation of a quorum should be considered as estopped from raising the question or should be considered as though they had resigned insofar as the meeting was concerned. First off, the attack here is in form at least made by the corporation, not the Vogel directors. But aside from that technical point, no authority for either proposition is cited in the brief and I know of no legal reason why such consequences should flow from the action of the Vogel group here, particularly where they felt that the principal business noticed for the directors' meeting should be a matter for stockholder action. I express no opinion as to the possible consequences of such action in other situations. I conclude that there was no estoppel or temporary resignations by the Vogel group.
Since the individual defendants were purportedly elected at a directors' meeting at which no quorum was present, it follows that their election was contrary to the governing by-laws and invalid. Their motion for summary judgment must therefore be denied.
The Loew's corporation's (Vogel group) motion for summary judgment will be granted to the following extent:
1. The individual defendants, Mayer and Briskin, will be declared to have been invalidly elected directors at the July 30, 1957, meeting and they will be enjoined from acting as directors on the basis of the July 30, 1957 action.
2. All action (except adjournment) taken at the July 30, 1957 meeting will be declared invalid and the plaintiff and the individual defendants will be enjoined from attempting to further implement such action.
The motion also seeks to restrain plaintiff and the individual defendants from interfering with the stockholders' meeting called by the President for September 12, 1957. In view of my decision and on this record I deny that part of the motion.
Present order on notice.

On Reargument
The individual defendants, whose election as directors on July 30, 1957, was held invalid in this court's opinion of August 26, 1957, have moved for reargument. Their motion is based upon a "new" view as to the proper construction of Article II, § 8(1). They suggest that the Loew's by-laws involving the filling of director vacancies (Article *527 II, § 8(14) and Article V, § 2) can be construed so as to give each a different function when a quorum of directors is in office. This would prevent the impasse which they say now exists.
Individual defendants commence by arguing that Article II, § 8(14) applies only when there is a quorum of directors in office and in attendance. Thus, under their construction, it would have no application to a meeting where there is no quorum in attendance though in office. They say the latter situation would then be covered by Article V, § 2.
I have noted in the earlier opinion that the exercise of the power granted by Article II, § 8(14) is subject to the quorum requirement of § 5 of Article II. Obviously the exercise of the other powers listed in § 8 is also subject to that quorum requirement.
After fixing the quorum requirement, § 5 of Article II then provides that "if less than a quorum shall be in attendance * * * those present may by majority vote adjourn the said meeting to another date certain." The foregoing language therefore explicitly contemplates and embraces the situation where an attempted exercise of the powers granted by § 8 may be frustrated by the absence of a quorum. In such a case no action can be taken. This language would be meaningless as applied to the power granted by § 8(14) if that provision only applies when a quorum is in attendance.
But the individual defendants in effect suggest that the construction of the general quorum requirement, insofar as § 8(14) is concerned, should be narrowed so as to give Article V, § 2 a construction which would permit it to apply to a situation where there is a quorum in office but not present. There is nothing in the language of Article II standing alone which would justify the more limited construction of § 8(14), and I do not believe the suggested consequence of this court's construction of Article V, § 2 is so strained or unreasonable that this court should strive to reach the construction suggested by the individual defendants.
The individual defendants suggest that their construction would have the added safeguard of requiring more votes to fill a vacancy when there was more than a quorum in office but not in attendance than would be required when there was more than a quorum in office and in attendance. Or course, the number required in each such case would be the same when there was exactly the quorum number in office. But passing by this difficulty, the point made by the individual defendant is not a decisive consideration. This is particularly so since the by-law provision as heretofore construed has meaning when confined to the situation where there is director action and no quorum in office. It might be noted that the point here made was possibly implicit in the Mecleary case but not mentioned.
The individual defendants say that the court's construction leaves a "blind spot" in Loew's by-laws insofar as filling vacancies is concerned when there is a quorum in office and when they disagree as to who should be elected to fill such vacancies. In analyzing this contention I pass over the "rights" of the stockholders. Obviously those drafting the by-laws can insert any reasonable requirements they desire concerning the filling of director vacancies. It is therefore not necessarily a blind spot merely because it is provided that no action can be taken in the absence of a quorum when there is a quorum in office. It may have been intended that way.
This same complaint could be made of any number of important actions which the board is impowered to take only in the presence of a quorum. The absence of a quorum often means that many important matters cannot be acted upon by those present *528 although they constitute a majority of the directors in office and although the same number could take effective action at a meeting at which a quorum is present.
I recognize that in the director-officer vacancy field Loew's has two by-laws, thus raising a problem of construction in those fields which does not arise as to the other powers granted by Article II, § 8. Nevertheless, for the reasons here given and for those given in the earlier opinion, I conclude that the motion of the individual defendants does not set forth grounds which would warrant a possible change in the conclusions set forth in the August 26, 1957, opinion. The motion for reargument will therefore be denied.
Present order on notice.
NOTES
[1] Since the point was not raised, I need not decide whether either faction, without regard to the present legal issues, had authority to file an answer for the corporation. Compare Bruch v. National Guarantee Credit Corp., 13 Del.Ch. 180, 116 A. 738.