Len J. DILLON and Fred R. Davis, Plaintiffs,

v.

SCOTTEN, DILLON COMPANY et al., Defendants.

Civ. A. No. 4182.

United States District Court, D. Delaware.

Dec. 16, 1971.

on the Board of Directors of Scotten, Dillon Company ("Scotten, Dillon"). Invoking jurisdiction pursuant to 28 U.S.C. § 2201, Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and the principles of pendent jurisdiction, the plaintiffs, Len J. Dillon ("Dillon") and Fred R. Davis ("Davis"), have filed suit to set aside the election of the individual defendants William M. Prifti ("Prifti") and S. Geyer Bean ("Bean") as directors of Scotten, Dillon. The plaintiffs contend that the elections of Prifti and Bean to the Board by other Board members were unlawful because they were not elected by a majority of the directors "then in office." Plaintiffs also contend that the elections of Prifti and Bean to the Board by the stockholders on March 31, 1971, were illegal because their elections were procured as a result of false and misleading proxy statements. For relief the plaintiffs have requested a declaratory judgment that they are entitled to the office of director of Scotten, Dillon until the next annual meeting of the stockholders and until their successors have been duly elected and qualified.

The case is before the Court on the plaintiffs' motion for summary judgment in their favor on the above issues. There is no genuine dispute of the relevant facts which may be summarized as follows.

Davis was originally elected a director of Scotten, Dillon in 1968, before Scotten, Dillon became a Delaware corporation through a merger with a Michigan corporation of the same name. Pursuant to the By-Laws of Scotten, Dillon and the Agreement of Merger, Davis was to serve as a director until his successor was elected and qualified. He was also to serve for a term of three years, which term was to terminate at the annual meeting held in 1971. (Davis Aff. pars. 5–8—Docket Item 12.)

Dillon was originally elected a director of Scotten, Dillon in 1954 and remained a director from that date forward. He was last elected a director in 1968 for a three year term, and pursu-

David T. Dana, III, Richards, Layton & Finger, Wilmington, Del., and Andrew N. Grass, Jr. and James P. Conroy, Windels, Merritt & Ingraham, New York City, of counsel, for plaintiffs.

Richard F. Corroon, Charles S. Crompton, Jr. and Michael D. Goldman, Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

LATCHUM, District Judge.

This case involves the question of who has the rightful possession of two seats

ant to the terms of the By-Laws and the Agreement of Merger, he was to serve until his successor was elected and qualified. (Davis Aff. pars. 6–8—Docket Item 12.)

On September 16, 1970, a meeting of the Board was held in Buffalo, New York. The following were present and acted as Board members: F. Steven Berg ("Berg"), George K. Bissell ("Bissell"), William Lerner ("Lerner"), Ernest Summers ("Summers"), Harold Gray ("Gray") and Dillon. At that time the Board consisted of seven members, a majority of which was four. (Compl. pars. 14, 17—Docket Item 1; Ans., pars. 14, 17—Docket Item 8). Prifti was nominated and purportedly elected an interim director to fill a newly created directorship.[1] Voting in favor of Prifti's election to the Board were Berg, Lerner, Bissell and Summers. Gray and Dillon voted against him.

On December 9, 1970, another Board meeting was held in Buffalo. Present and participating as Board members at that meeting were the following: Berg, Bissell, Lerner, Summers, Prifti, Dillon and Davis. At the meeting Bean was nominated and purportedly elected an interim director to fill a second newly created directorship. Prior to Bean's election, the Board, if Prifti's election was valid consisted of eight members, five of which constituted a majority. Voting in favor of Bean's election were Berg, Bissell, Lerner, Summers and Prifti. Dillon and Davis voted against him.

On February 5, 1971, a Board meeting was held in New York City. In attendance and participating at that meeting were Berg, Lerner, Summers, Bean, Gray and Dillon. The Board voted to call the 1971 Annual Meeting and passed the following resolutions:

"FURTHER RESOLVED, that the Chief Executive Officer, Executive Vice President and Secretary of the Company, and either of them be and hereby are authorized and empowered to cause to be prepared and sent to stockholders an Annual Report, a Notice of Annual Meeting, a Proxy Statement, and a Proxy, . . . ;"

\*     \*     \*     \*     \*     \*

"FURTHER RESOLVED, that the Board of Directors hereby appoints S. Geyer Bean and William M. Prifti, directors, as the management slate for election to the Board of Directors of the Company at said Annual Meeting . . . ;" (Crompton Aff., Ex. D, pps. 15–16—Docket Item 15).

Berg, Lerner, Summers and Bean voted in favor of the above resolutions. Gray and Dillon voted against them.

On or about March 10, 1971, the proxy soliciting material was sent to the stockholders of Scotten, Dillon. It purported to represent management and stated that Bean and Prifti had been nominated as candidates for the Board by the Board of Directors on February 5, 1971. It also stated that both Bean and Prifti had been elected interim directors, subsequent to the 1970 Annual Meeting. At the 1971 Stockholders' Meeting that was held on March 31, 1971, Bean and Prifti were elected as directors to the seats formerly held by Davis and Dillon, leaving two seats vacant. (Compl. par. 34—Docket Item 1.)

The heart of plaintiffs' argument centers on the fact that on May 6, 1971, this Court held in the case of Dillon v. Berg, 326 F.Supp. 1214 (D.Del.1971), that Summers had never been legally elected a director of Scotten, Dillon and was not entitled to hold the office of director. Therefore, plaintiffs contend that Summers could not have been considered a director "then in office" under § 223 of the Delaware Corporation Law, 8 Del.C. § 223, during any of the dates mentioned above. Plaintiffs further contend, that since Summers was illegally in office and

---

1. Art. IV, Section 1 of the By-Laws provided that the corporation should be managed by not less than six or more than fifteen directors. The Board was empowered to increase the number of directors within these limits and to elect interim directors to serve until the next annual meeting. At the September 16, 1970 Board meeting, the Board increased the number of directors from seven to nine.

could not be counted as an officer "then in office" on the dates in question, there was never a valid election of either Prifti or Bean [2] as interim directors nor was there a valid designation of Prifti and Bean as nominees for election as directors at the 1971 Annual Meeting or a valid authorization for the preparation and distribution of proxy material for that Annual Meeting.

Thus, the success of the plaintiffs' contention depends upon whether Summers' votes at the above meetings were valid. If not the plaintiffs must prevail.

Section 223 of the Delaware Corporation Law, 8 Del.C. § 223, states:

"(a) Unless otherwise provided in the certificate of incorporation or bylaws, vacancies and newly created directorship resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office, . . ."

The Certificate of Incorporation of Scotten, Dillon has no provision on the subject. However, Article IV, Section 3 of the By-Laws of the Company states, in part:

"If the office any director becomes vacant by reason of death, resignation, disqualification, increase in the number of directors or otherwise, the remaining directors may, at any regular or special meeting of the Board of Directors at which a quorum is present, elect a successor . . ."

And Article IV, Section 5 of the By-Laws provides in part:

"A majority of the members of the Board of Directors shall constitute a quorum for the transaction of business, . . ."

"Neither section specifies the voting strength necessary to elect a director to fill a vacancy or newly created directorship." Dillon v. Berg, *supra,* 326 F. Supp. at 1226. Therefore, as this Court previously held in Dillon v. Berg, § 223 of the Delaware Corporation Law, 8 Del. C. § 223, governs this situation. Thus, at the election of Prifti as an interim director on September 16, 1970, a majority of the Directors "then in office" was four. Dillon v. Berg, *supra,* at 1226; See In Re Chelsea Exchange Corporation, 18 Del.Ch. 287, 159 A. 432 (1932).

The defendants contend that, while Summer's election to the Board may have been illegal, he could properly act as a *de facto* director.[3] However, despite the defendants' claim that Summers' votes were properly counted on the dates in question since he was at least a *de facto* director "then in office," this Court holds that the *de facto* directors' doctrine does not apply when there is a direct challenge to a disputed office. That doctrine may not be used to perpetuate illegal control.

The general rule affecting *de facto* directors is as follows:

"The acts and contracts of a de facto officer, acting within the sphere of his office, are just as valid and binding upon the corporation as if he were an officer de jure, so far as third persons are concerned." 2 Fletcher, Cyclopedia of Corporations § 383.

In this case the challenge does not involve third parties. It concerns two sets of officers claiming title to the same directorships. The doctrine of *de facto* directors does not apply in cases not involving third parties. See 2 Fletcher, Cyclopedia of Corporations § 383; *Accord,* Mortgage Land Investment Co. v. McMains, 172 Minn. 110, 215 N.W. 192, 196 (1927); In Re George Ringler & Co., 204 N.Y. 30, 97 N.E. 593, 598 (1912); Shellenberger v. Patterson, 168 Pa. 30, 31 A. 943, 945 (1895). The law of Delaware is in accord with this

---

2. If Summers' vote for Prifti was invalid and Prifti was therefore not legally on the Board, Prifti's vote for Bean could not be counted for the purpose of obtaining majority support for Bean.

3. The defendants rely on Dillon v. Berg, supra, 326 F.Supp. at 1226 (fn. 15) which states: "Summers' status as a *de facto* director or the validity of corporate acts done by him are not before this Court in the present suit."

principle. In Young v. Janas, 34 Del.Ch. 287, 103 A.2d 299 (1954), the Delaware Court of Chancery, in finding an election of a director by one class of stockholders invalid, stated:

"It is clear that Walsh was invalidly elected and since we are not concerned with problems of the rights of third persons dealing with the corporation, it seems . · . . that his status can be successfully attacked in this type of proceeding at least by a Class A stockholder. See In re Chelsea Exchange Corp., 18 Del.Ch. 287, 159 A. 432; 1 Cook on Corps., 9th Ed., pp. 2937–2938. Even if the actions of a director so elected might be accepted for certain purposes in dealing with the internal affairs of a corporation, as illustrated by Drob v. National Memorial Park, Inc., 28 Del.Ch. 254, 41 A.2d 589, nevertheless, I do not believe that the very status of a director so elected is insulated from direct attack by some extension of the de facto theory. A contrary result would seriously impair the vitality of charter and by-law provisions as well as the theory of corporate democracy." 103 A.2d at 301.

Additionally, the case of In re Chelsea Exchange Corporation, 18 Del.Ch. 287, 159 A. 432 (1932), is virtually identical to the present factual situation and supports the plaintiffs' position. In that case the corporation had a nine man board of directors, a majority of which was a quorum. Two board members resigned and on October 15, 1931, two of the seven remaining directors purported to elect two others to fill the vacancies. The Court ruled that the two new directors had not been lawfully elected to fill the vacancies. Thus, the remaining original seven directors constituted the de jure board. At a later meeting held on November 19, 1931, six of the original

board, plus the two illegally elected directors, purported to accept another resignation and filled the vacancy by a five to three vote. The Court treated the two illegally elected directors as if they had never attended the November 19th meeting. It was not a meeting of eight of the full nine member board. It was a meeting of six of the seven de jure board members. The Court discounted the votes cast by the two illegally elected directors who had voted with the majority. Thus, the vote for filling the additional vacancy was three to three, one vote shy of a majority of a quorum. The election was declared null and void, and the newly elected director was not entitled to sit on the board.

◼ Having found that Summers was illegally in office in Dillon v. Berg, supra, 326 F.Supp. at 1225–1226, the Court holds that the de facto directors doctrine cannot be extended to the facts of this case. The votes cast by Summers at the meetings in question must be discounted. Therefore, the following results occur: (1) Prifti was not lawfully elected an interim director of Scotten, Dillon on September 16, 1970. Upon subtracting Summers' vote, the result of that election was a three to two vote in favor of Prifti, one vote short of a majority of the directors "then in office" ; [4] (2) Bean was not lawfully elected an interim director at the Board Meeting of December 9, 1970. After subtracting the votes cast by Summers and Prifti at that election,[5] the vote for Bean was three to two, again one vote short of the necessary majority of the directors "then in office"; and (3) the resolutions adopted on February 5, 1971, purporting to nominate Prifti and Bean as Board nominees for the seats that Dillon and Davis then held and authorizing the Executive Committee to prepare and distribute proxy solicitation for the 1971

4. On the date of the September 16, 1970 Board meeting in Buffalo, the Board of Directors consisted of seven men, a majority of which was four. (Compl. pars. 14, 17—Docket Item 1; Ans. Pars. 14, 17—Docket Item 8).

5. Since by discounting Summers' vote Prifti was not legally in office, his vote, likewise, cannot be counted in determining whether Bean received a majority of the votes of the directors "then in office."

Annual Meeting were invalid.[6] When the votes of Summers and Bean are subtracted, it is clear that the resulting vote on the resolutions was two to two; thus, less than a majority of the directors present voted in favor of the actions.

Having made the above findings, the Court further concludes that the proxy material sent to the shareholders on March 10, 1971, was materially false and misleading in several respects thereby nullifying and voiding the election of Prifti and Bean to the Board on March 31, 1971.

The plaintiffs have alleged that Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a),[7] was violated. It is contended that, although the proxies mailed by Scotten, Dillon purported to conform to the requirements of Regulation 14A, the proxies contained statements which at the time and under the circumstances in which they were made were false and misleading which respect to material facts and which omitted material facts necessary to make the statements therein not false or misleading.

The plaintiffs contend, and the Court holds, that the proxy material was false and misleading in the following respects: (1) It purported to have been furnished "in connection with the soliciting of proxies by [m]anagement. . . ."; (2) It stated that "[s]ubsequent to the 1970 annual meeting the Board of Directors . . . appointed S. Geyer Bean and William M. Prifti interim directors. . . ."; (3) It stated that "the Board of Directors [had] nominated the following as candidates for directors. . . . : S. Geyer Bean, William M. Prifti"; and (4) It stated that "each of such persons [was] presently a director of the Company, . . ."

Since the votes of Summers, Prifti and Bean can not be counted because they were illegally elected to office, the statements made in the proxy materials were not true. The necessary vote of directors essential to give truth to the above statements had not been obtained in any instance.

"In order to find that Rule 14a–9, 17 CFR § 240.14a–9, has been violated by false or misleading statements or omissions, the statements or omissions must be material."[8] Dillon v. Berg, *supra*, 326 F.Supp. at 1233.

Applying the standard of materiality set forth by the United States Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970) and applied by this Court in Gould v. American Hawaiian Steamship Co., 319 F.Supp. 795, 802 (D.Del. 1970) and Dillon v. Berg, *supra*, 326 F. Supp. at 1233, that a statement or omission is material if it "was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote" or had a "significant propensity to affect the voting process," the Court finds that false statements made by Scotten, Dillon in its proxy ma-

---

6. Since the Certificate of Incorporation and the By-Laws of Scotten, Dillon are silent on the subject, Section 141(b) of the Delaware Corporation Law, 8 Del. C. § 141(b), governs as to the vote of the directors necessary to transact business. That section provides in part:

"The vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors unless the certificate of incorporation or the by-laws shall require a vote of a greater number."

7. See Rule 14a–9, 17 CFR § 240.14a–9.

8. Rule 14a–9 reads in part: "(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading." 17 CFR § 240.14 a–9.

terials were materially misleading. *See* Dillon v. Berg, *supra*, at 1233–1235.

■ No question exists that this Court has the power to grant all necessary relief to redress violations of Section 14(a) of the Securities Exchange Act of 1934. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed. 2d 423 (1964). In view of the violations of Section 14(a) referred to above, the proxies used at the March 31, 1971 Annual Shareholders Meeting of Scotten, Dillon must be declared void and the election of Prifti and Bean as directors declared null and void. Since the elections of Prifti and Bean to succeed Dillon and Davis are null and void, successors to Dillon and Davis have never been lawfully elected. Therefore, Dillon and Davis are still entitled to the office of director of Scotten, Dillon under the Company's By-Laws, Article IV, Section 2, which reads:

> "Each Director so elected shall hold office for the term for which he was elected and until his successor is elected and qualified." (Compl. Exh. B —Docket Item 1).

In this case no successor to either Dillon or Davis has yet been lawfully elected and qualified.[9]

■ Defendants contend that they are not bound by the decision in Dillon v. Berg, *supra*, since they were not parties to that case. The Court finds no merit to this contention. The prior judgment in Dillon v. Berg operates res judicata as to Scotten, Dillon Company, a party in that case. Prifti and Bean were *de facto* directors of the Company, positions creating sufficient "identity of interest" with the Corporation to make the decision in Dillon v. Berg binding upon them. *See* 1B Moore's Federal Practice ¶ 0.411[10] (2d ed. 1965).

Accordingly, the Court will enter a judgment declaring (1) that Prifti and Bean were never validly elected as directors of Scotten, Dillon by the stock-

holders at the 1971 Annual Meeting, and (2) that Dillon and Davis are entitled to serve as directors of Scotten, Dillon until their successors are duly elected and qualified or until the positions which they occupy are otherwise legally terminated.

---

9. See Vogtman v. Merchants' Mortgage & Credit Corp., 20 Del.Ch. 364, 178 A. 99, 104 (1935); In Re Mississippi Valley Utilities Corp., 2 F.Supp. 995, 997 (D.Del.1933).