Len J. DILLON et al., Plaintiffs,

v.

F. Steven BERG et al., Defendants.

Len J. DILLON and Fred R. Davis, Plaintiffs,

v.

SCOTTEN, DILLON COMPANY et al., Defendants.

Civ. A. Nos. 3967, 4182.

United States District Court, D. Delaware.

Nov. 29, 1972.

---

See also D.C., 347 F.Supp. 517.

David T. Dana, III of Richards, Layton & Finger, Wilmington, Del., and Andrew N. Grass, Jr., of Windels, Merritt & Ingraham, New York City, of counsel, for plaintiffs.

Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for the individual defendants.

Arthur G. Connolly, Jr. of Connolly, Bove & Lodge, Wilmington, Del., for the defendant, Scotten, Dillon Co.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, Del., for the minority stockholders, Joseph C. and Rita D. Galdi.

## OPINION

LATCHUM, District Judge.

Plaintiffs seek an allowance of attorneys' fees in the amount of $250,000[1] and the reimbursement of expenses totaling $37,655.16[2] incurred in the prosecution of these two actions to be paid by Scotten, Dillon Company, the corporate defendant on whose behalf the suits were derivatively brought. Basing their request upon Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970), the plaintiffs claim that they are entitled to reasonable fees and

---

1. Attorneys' fees of $200,000 are requested in C.A. 3967 and $50,000 in C.A. 4182.

2. The sum of $7,714.66 is for out-of-pocket expenses of counsel incurred in prosecuting the two cases and the remaining expenses of $29,940.50 were incurred in

connection with the special stockholders meeting ordered by the Court. This latter amount is broken down as follows: $10,000 legal fees; $1,505.38 counsel's out-of-pocket expenses; $13,761.12 for proxy solicitation and $4,674.00 for printing proxies.

expenses because they " . . . achieved in this derivative action results beneficial to Scotten, Dillon by the exposure and redress of violations of the Federal Securities Laws . . . ", " . . . have vindicated the statutory policy of the Federal Securities Laws . . . [and] rendered a substantial service to the corporation and its shareholders . . . "[3]

■ The normal rule with regard to attorney's fees is that each side must bear its own costs of bringing suit. As the Supreme Court stated in Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967),

"The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."

■ One exception mandated by equitable principles of unjust enrichment arises where the actions of a plaintiff benefit others as well as himself by creating a common fund. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882). This exception was extended even where no fund was created in the traditional sense in Sprague v. Ticonic National Bank; 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). There the plaintiff, by vindicating her rights to a trust, established the rights of fourteen others whom she never purported to represent. The Supreme Court held that it would be inequitable to allow the other beneficiaries to receive the full benefit of the plaintiff's efforts without requiring a contribution from them or charging the common fund with attorney's fees. In Mills, supra, the Court applied this principle to corporate actions and indicated that a substantial benefit conferred on a class of shareholders by a derivative suit need not be capable of monetary valuation in order to justify an award of counsel fees. However, the

Supreme Court in the latter case failed to provide guidelines for determining when an intangible benefit can be regarded as substantial enough to justify awarding attorney's fees.

Thus, for this Court to determine the amount of attorneys' fees to be awarded, it is necessary to examine C.A. 3967 and C.A. 4182 to determine the benefits conferred on the plaintiffs specially and also to determine the benefits conferred on all the shareholders generally.

In Dillon v. Berg, C.A. 3967[4] this Court found that certain conduct of the defendants gave rise to proxy violations. First, under Delaware corporation law, Board Director Power had not been properly removed from the Board. Thus, he remained a director, and the omission of his name and other information required to be disclosed in the proxy statement by Schedule 14A constituted a violation of Rule 14a–3. Second, under Delaware law, Summers was not properly elected to fill Power's Board position so that the statement in the proxy solicitation material that he had been elected at the July 22, 1970 director's meeting to fill Power's unexpired term was false. Third, certain proposals had not been voted on by a majority of the Board as defined under Delaware law and hence were improperly referred to as "management proposals" on the proxy solicitation materials.

Other violations were that the defendants failed to disclose the issuance of warrants to Berg and their subsequent cancellation as required by Schedule 14A, failed to notify the shareholders that the Board had been expanded to nine members at the June 19, 1969 Board meeting, failed to notify the shareholders of an increase in Director Summer's salary from $8,000 to $25,000, and failed to disclose that Gray held the position of chairman of the executive committee of the Board.

3. Docket Item 101, pars. 3 and 7 in C.A. 3967.

4. Dillon v. Berg, 326 F.Supp. 1214 (D. Del.1971), aff'd 453 F.2d 876 (C.A. 3, 1971).

In Dillon v. Scotten, Dillon Co., C.A. 4182,[5] the Court found that, under Delaware law, Prifti and Bean had not been validly elected as interim directors, nor had a Resolution of February 5, 1971, designating Prifti and Bean as Board nominees, been adopted by a majority of the Board as defined under Delaware law. Thus, the proxy solicitations for the 1971 Annual Meeting contained false information when it was stated that Prifti and Bean were presently directors and that they were the choice of management.

An examination of the facts in C.A. 3967 and C.A. 4182 clearly discloses that the primary disputes arose from a personal power struggle between two factions on the Board of Directors. This Court, when it determined under Delaware law the impropriety of the defendants' actions, voided them. As a result, statements made in the proxy solicitation materials, which reflected the actions taken by the defendants that the Court had voided, were thus rendered untrue and incidentally became violative of Section 14(a). In this respect, Section 14(a) served merely as a jurisdictional basis for bringing these suits in federal court in order to determine essentially a fight for control of the corporation.

■■■ This Court does not read *Mills* to hold that every successful suit brought under Section 14(a) provides such a "substantial benefit" to all the shareholders as to justify awarding attorney's fees under all circumstances. On the basis of two considerations the Court regards the instant situation as one in which an award of the full amount of attorneys' fees and expenses requested would be unjustified.

First, as a result of these suits, no corporate policy changes resulted. No massive expenditures or mergers were aborted. The corporation is proceeding in much the same manner as previously, save that different directors are on the Board.[6] It appears that for the great majority of shareholders, the benefit for them consisted mainly of the ethereal pleasure of having their federal rights of full disclosure vindicated. In contrast to the situation in *Mills*, where there was a pecuniary benefit to all shareholders in preventing a merger albeit incapable of precise determination, in the instant case there has been no fund created and no enhancement of the value of the shares held.[7] Meanwhile the plaintiffs in the suits have achieved a substantial benefit for themselves over and above the "benefit" conferred on the general class of shareholders by preventing the opposing faction from gaining control of the Board of Directors.

Secondly, the corporation made a profit of only $79,000 in 1971 after a loss of $900,000 in 1970. Even presuming that the vindication of the policy of the federal securities law constituted a benefit to the shareholders as a whole, his "benefit" would be more than offset if the corporation were forced to pay plaintiffs' attorneys' fees of $250,000 plus expenses, possibly driving it into insolvency. Assuming further that the attorneys' fees requested reflect the reasonable time spent on the type of actions brought, at some point in the litigation the plaintiffs should have been aware of the disproportionate costs of the litigation in relation to the delicate financial position of the corporation and the insubstantial benefit to the shareholders generally.

As a matter of doing justice to all the shareholders, the Court must balance the above considerations against the policy underlying *Mills* of encouraging suits to

---

5. Dillon v. Scotten, Dillon Co., 335 F. Supp. 566 (D.Del. 1971).

6. The factional fight for control continues in other litigation both in this Court and in the Court of Chancery of the State of Delaware.

7. The rise of the trading price of the corporation's stock on the Detroit Stock Exchange since the Court's decision in C.A. 3967 has not been shown to be any more than a reflection of the general rise in stock values between May, 1971 and February, 1972.

correct Section 14(a) violations which might not have been brought but.for the possibility of remuneration.[8] To fulfill this policy, the Court is obliged to compensate the plaintiffs for the benefit they have conferred on the corporation by their suits. The Court will not award attorneys' fees for that portion of the effort which conferred special benefits on the plaintiffs over and above that conferred on the general class of shareholders. Kahan v. Rosenstiel, 424 F.2d 161, 174, n. 16 (C.A.3, 1970), cert. denied 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). The award will be further limited by the fact that the sizeable award requested could wipe out any "corporate therapeutics" benefit by thrusting the corporation into insolvency.

Because the benefit to the corporation is intangible and since no fund was created or preserved, the Court's determination of the percentage of fees attributable to general corporate benefit of necessity can be only a reasonable estimate. Since the more serious violations in C.A. 3967 as well as both violations in C.A. 4182 were directly connected with the underlying personal power struggle for control of the Board of Directors, the Court must earmark a heavy proportion of the attorneys' fees and out-of-pocket expenses requested to these violations which were of special benefit to the plaintiffs over and above any general corporate benefit to the corporation and stockholders as a whole. The Court therefore determines that 90% of the attorneys' efforts were expended in the fight for control of management of the corporation resulting in a special benefit to them, and 10% of their effort was expended in services which conferred a benefit on the corporation generally. Thus, the plaintiffs will be awarded attorneys' fees in the sum of $25,000 and expenses in the sum of $771.46.

With respect to the plaintiffs' additional request for $29,940.50 to pay the legal, printing and soliciting expenses incurred for holding the reconvened 1970 Annual Shareholders Meeting ordered by the Court in C.A. 3967, it is to be noted that the corporation, then controlled by the faction of which plaintiffs were a part, entered into contracts for these services with a law firm, soliciting agent and printer. These latter entities are able on their own behalf to bring suit on their contracts, if necessary, to recover the amounts due them from the corporation. This Court is without jurisdiction to determine the contractual claims of these non-parties in this fee application proceedings brought by the individual plaintiffs. Dillon v. Berg, 347 F.Supp. 517 (D.Del.1972).

An order will be entered in accordance with this opinion.

---

8. Note, 38 U.Chi.L.Rev. 316, 327 (1971).