**Len J. DILLON et al., Appellants,**

v.

**F. Steven BERG et al. (three cases).**

**Appeal of F. Steven BERG et al.**

**Appeal of SCOTTEN, DILLON COMPANY.**

**Len J. DILLON and Fred R. Davis, Appellants,**

v.

**SCOTTEN, DILLON COMPANY et al.**

**Len J. DILLON and Fred R. Davis**

v.

**SCOTTEN, DILLON COMPANY, Appellant in No. 73–1139, et al. (two cases).**

**Appeal of William M. PRIFTI and S. Geyer Bean.**

**Nos. 73–1135 to 73–1140.**

United States Court of Appeals, Third Circuit.

Argued June 21, 1973.

Decided Aug. 8, 1973.

David T. Dana, III, Richards, Layton & Finger, Wilmington, Del., for Len J. Dillon, Harold Gray and Fred R. Davis.

Jack B. Jacobs, Bruce M. Stargatt, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for F. Steven Berg, William Lerner, George K. Bissell, Er-

---

1. See Northcross v. Memphis Board of Education, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) [41 LW 3635, June 4, 1973].

nest Summers, William M. Prifti and S. Geyer Bean.

Arthur G. Connolly, Jr., Connolly, Bove & Lodge, Wilmington, Del., for Scotten, Dillon Co.

Before VAN DUSEN, ALDISERT and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Plaintiffs, who shall be referred to as the Dillon faction, and defendants, the Berg faction, both appeal from the district court order of November 29, 1972 awarding counsel fees to plaintiffs. As explained in the district court's opinion, reported at 351 F.Supp. 584 (D.Del. 1972), the district court awarded to plaintiffs a portion of the amount they had requested as reasonable attorneys' fees for the prosecution of two earlier lawsuits, Dillon v. Berg, 326 F.Supp. 1214 (D.Del.), aff'd, 453 F.2d 876 (3rd Cir. 1971), and Dillon v. Scotten, Dillon Co., 335 F.Supp. 566 (D.Del.1971).[1] We are reluctant to disturb the award of the district court, especially since, having sat on the two earlier cases, it was in an excellent position to evaluate the lawyers' services. We have, however, concluded that the district court erred in failing to make a specific finding whether the fees claimed were reasonable, possibly because of an inadequate record.

Because the proceedings in the two earlier cases were extensively set out in the decisions just referred to and were summarized in the district court opinion in this case, it is unnecessary now to go into a detailed discussion of the background facts. Briefly, the Dillon faction has been battling with the Berg faction for control of Scotten, Dillon Co. In Dillon v. Berg, 326 F.Supp. 1214, the Dillon faction was successful in establishing that proxy materials sent out by the Berg faction in the name of the company contained numerous material misstatements. The principal misstatements derived from the invalidity of the removal of one Powers from Scotten, Dillon's board of directors and of his replacement by one Summers. The court held that the proxy materials were in violation of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (1970), and Rules 14a–3 and 14a–9, 17 C.F.R. § 240.14a–3, 240.14a–9 (1972). To remedy these violations the court declared that the 1970 Annual Stockholders' Meeting held in August 1970 was illegal and ordered that a new meeting be convened.

In Dillon v. Scotten, Dillon Co., D.C., 335 F.Supp. 566, the Dillon faction was again successful in proving proxy solicitation materials to be misleading. This time success came easily. The materials in question were prepared for the 1971 meeting and had been sent out prior to the decision in Dillon v. Berg, supra. The falsity of the major misstatements —once again, the precise membership of the board of directors—was a direct consequence of that decision. The court did not declare illegal the entire 1971 meeting, but did void the purported election at that meeting of two persons to the board.

The Dillon faction based its request for attorneys' fees on Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In Mills, the Court held that when a plaintiff proves that proxy materials violated the federal securities laws, he confers a substantial benefit on all shareholders and that therefore all shareholders, through the corporation, should bear the legal expense he has incurred. See 396 U.S. at 389–397. Having established such violations here, the Dillon faction submitted a request for attorneys' fees of $250,000.00 and out-of-pocket expenses of $7,714.66.[2] According to their com-

---

1. Plaintiffs also appeal from the district court's failure to award various sums of money to certain non-parties whose services were employed during the reconvening of an annual meeting (351 F.Supp. at 588). Plaintiffs' arguments on this issue are without merit.

2. Plaintiffs also requested $29,940.50 for purposes indicated in note 1, supra.

plaint, their two law firms together worked for about 1,760 hours on Dillon v. Berg and about 100 hours on Dillon v. Scotten, Dillon Co.; they ask for $200,000. for the former case and $50,000. for the latter. App. 136–38. Supporting affidavits of members of the two firms verify the total time figures and enumerate the various activities at which time was spent, but fail to state how much time was spent at such various activities and by whom. App. 139–62.

Without making a specific finding as to the reasonability of the amounts requested,[3] the district court proceeded to multiply them by 10% to represent that part of the lawyers' efforts that benefited the shareholders generally, stating that 90% of the legal services were for the sole benefit of the Dillon faction. Hence, the court made its final award of $25,000. attorneys' fees and $771.46 expenses.

█ Since the case must be remanded to the district court[4] in order that it may make a finding on an adequate record[5] of the amount of the fee claimed by the Dillon faction which is reasonable,[6] we point out that the district court determination should be made in light of the recent decision of the Supreme Court of the United States in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In Hall, the Court affirmed the award of counsel fees to a union member who vindicated the rights guaranteed him in the "Bill of Rights of Members of Labor Organizations," Title I of Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2) (1970). Two aspects of Hall are relevant here. First, the Supreme Court held that the district court properly exercised its discretion by considering the state of the defendant union's treasury. See 93 S.Ct. 1943. This supports an action by the district court which we find was eminently reasonable, namely, the taking into account of Scotten, Dillon's financial condition.[7]

Secondly, the Supreme Court rejected the proposition that the award of counsel fees should be diminished because the union member was motivated by ambitions for political office in the union. As support, the Supreme Court cited the factually similar (to Hall) case of Yablonski v. UMW, 151 U.S.App.D.C. 253, 466 F.2d 424, 430–431 (1972). We find the Yablonski court's language at pages 430–431 particularly lucid:

"We turn, then, to the merits of the District Court's observation that the Yablonski lawsuits did not benefit anyone except Yablonski. Preliminarily we remark that it is not enough to say, as did the District Court, that a 'primary purpose' of the lawsuits was to facilitate Yablonski's candidacy. It is obvious that in virtually all litigation of this character, in the la-

3. In an order of December 18, 1972, the district court denied a motion by the Berg faction for reargument on the grounds that the original figure of $250,000. was unreasonable. This action unfortunately leaves unclear whether the district court believed the original figure to have been reasonable, believed the ultimate figure of $25,000. to be reasonable, or based its decision on other grounds.

4. We of course express no views at this time as to whether the ultimate award should be greater than, equal to, or less than the present award of $25,000.

5. We are unable to determine from the record if the district court properly considered whether counsel's time was spent entirely on advising the Dillon faction about the conduct of two earlier lawsuits or whether part of the time was actually devoted to other aspects of the fight for control.

6. The factors to be considered in evaluating the reasonableness of fees in such cases have recently been stated in Galdi v. Berg, 359 F.Supp. 698 (D.Del., 1973). See also In re Imperial "400" National, Inc., 432 F.2d 232, 239 (3d Cir. 1970); In re Hardwick & Magee Co., 355 F.Supp. 58 (E.D.Pa.1973). Cf. Restatement (Second), Trusts, § 188, comments C and F. As Judge Adams pointed out in Kahan v. Rosenstiel, 424 F.2d 161, 174–175 n. 16 (3d Cir. 1970), it is essential in such a case for the district court to consider the amount of time and effort expended by the plaintiff in achieving success in the above-mentioned litigation.

7. In 1970 Scotten, Dillon lost $900,000.; in 1971 it made a profit of only $79,000.

bor field or out,[8] a plaintiff pursues his own interest as well as that of others. The relevant question is whether or not the trouble he takes results in the actual conferring of benefits on others than himself."

The same rationale applies here. The benefits of the two lawsuits to the Dillon faction and to all the shareholders were not necessarily mutually exclusive.

After careful consideration, we have concluded that the present record is inadequate to permit determination of whether the total fees claimed were reasonable for the legal work done on the two civil actions mentioned above, and that the district court, also, has the right to reconsider the reduction of such fees by percentage or otherwise in the light of the *Hall* case, *supra*. The district court order of November 29, 1972, will be vacated and the case remanded for further proceedings consistent with this opinion. Each party is to bear its own costs.

---

8. The court had immediately before this passage discussed Mills v. Electric Auto-Lite.