

Decided July 15, 1986

FILED

15 JUL 1986

Clerk
Commonwealth Trial Court
Northern Mariana Islands

By: _____
Ass't. Clerk of Court
(Saipan)

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

GOVERNMENT OF THE NORTHERN )      CIVIL ACTION NO. 84-329
MARIANA ISLANDS, )
                       )
        Plaintiff, )
                       )
       vs. )            SUMMARY JUDGMENT
                       ) RE: Defendants Chan and Reyes
MICRONESIAN INSURANCE )
UNDERWRITERS, INC., et al., )
                       )
        Defendants. )
_____ )

On June 2, 1986 the Government filed its motion for partial summary judgment pursuant to Rule 56, Com.R.Civ.P.[1] The motion was supported by affidavits and other documents, primarily corporate records.

The crux of the motion is that cross-defendants Norman Chan and Karl Reyes are liable for the corporate debts of the Commonwealth Bank because at the time the Bank started business

---

[1] The Receiver for the Commonwealth Bank filed a similar motion, primarily relying on the Government's authorities and documents. The motions shall be treated as one except as noted.

it was undercapitalized and pursuant to Title 37, Section 2.7 of the Trust Territory Corporation Regulations they are liable.[2]

Section 2.7 reads:

> "2.7 <u>Capital Necessary to Engage in Business;</u> <u>Liability of Directors</u>. No corporation for profit shall upon the incorporation thereof engage in business in the Territory until three-fourths of its authorized capital stock has been subscribed for nor until ten percent of its authorized capital stock has been paid in by the acquisition of cash or by the acquisition of property of a value equal to ten percent of the authorized capital stock ... In case of any violation of this section by any corporation, the incorporators and the directors thereof at the time the corporation commences to engage in business shall in their individual and private capacities be jointly and severally liable to the corporation and the stockholders and creditors thereof in the event of its bankruptcy or insolvency or in the event of its dissolution for any loss suffered by the corporation or its stockholders or creditors."

IS THERE A GENUINE ISSUE OF FACT WHETHER THE SUBSCRIPTIONS AND PAID IN CAPITAL REQUIREMENTS OF SECTION 2.7 HAVE NOT BEEN MET?

The Government's motion is supported by several documents and affidavits which show that:

1. Of the 800,000 shares authorized (Article VII, Section 1 of the Amendment Articles of Incorporation) the maximum number of shares subscribed was 49%.

2. Only 70,000 shares at $1.00 a share were ever paid in. (See affidavit of defendants Reyes and Sablan dated 9/24/82, attached to Affidavit of the Commonwealth Registrar of Corporations)

---

2/
No party has questioned the applicability of Section 2.7. The only issue raised is whether under the circumstances of this case, the defendants are liable pursuant to the terms of the Regulation.

762

3. The reconstruction of the corporate records demonstrate the failure of the Bank to be adequately capitalized. (See Heston affidavit)

Thus the requirements of Section 2.7 were never met. None of the defendants have really contested this issue. The only semblance of contradiction is found in an affidavit filed on the day before the hearing of this matter by defendant Reyes. Upon the motion of the Government, this affidavit was stricken. It was not timely filed under the Rules of Practice of this Court (Rule 8(a)(2), Com.R.Prac.) and it does not comply with Rule 56(e), Com.R.Civ.P. in that it does not show affirmatively that the affiant is competent to testify to the matter stated therein. Lastly, even if the court were to consider the affidavit,the only portion of the declaration going to rebut the finding of undercapitalization is paragraph 5 which begs the issue. The affiant stated he "... observed that ..." the subscriptions and 10% payment had been made. As Government's counsel has pointed out, the prior depositions of Mr. Reyes in the related case of <u>In Re Receivership of the Commonwealth Bank of the Northern Marianas Inc.</u>, C.A. 84-204 and this case, reveal severe contradiction in the "observation" made in Mr. Reyes' affidavit of July 8th. Under all the circumstances, even if the "observation" of Mr. Reyes could be considered, it does not raise a <u>genuine</u> issue as to a material fact in so far as the amount of subscriptions and paid in capital is concerned.

WERE THE DEFENDANTS CHAN AND REYES DIRECTORS OF THE BANK?

1. NORMAN CHAN

This defendant argues that he could never have become a de jure director because there was no shareholders meeting and no election of him as a director. Such a meeting and election is mandated by Section 11 of the By-laws of the Corporation. It is fairly clear that no such formal meeting took place. At least this is what Chan and co-defendant Sablan have testified to in their depositions and there is no corporate record of a formal shareholders meeting at which Chan was elected a director.

On the other hand, the corporate records indicate:

1. On September 21, 1982, Chan paid into the corporation $8,400 for 8,400 shares of stock and subscribed for 38,640 shares. The man who "appointed" Chan to the Board of Directors, Cheung Ting Bong (T.B. Cheung) purchased 57,050 shares. Another person, Luther Yip, purchased 1,750 shares.

2. On the same date Chan was named as one of the five directors of the corporation.

3. On September 25, 1982 Chan attended a corporate board of directors meeting in which he was confirmed to have been given a special power of attorney and signed the minutes which reflect various decisions by the board of directors.

4. On February 3, 1983 Chan attended a Board of

764

Directors meeting and was appointed to the "Examining Committee."

5. On May 25, 1983, Chan attended a Board meeting upon receiving notice directed to him as a member of the board.

6. On July 6, 1983 Chan attended a Board meeting.

7. On October 18, 1983 Chan attended a Board meeting.

8. On February 22, 1984 Chan attended a Board of Directors meeting, signed and concurred in a resolution on various matters involving the Bank.

9. On June 28, 1984 Chan submitted his resignation as a member of the Board of Directors of the Bank.

Notwithstanding this uncontradicted involvement of Chan in the corporate affairs, it is asserted that, at most, he is nothing more than a de facto director and that this is a factual issue to be determined at trial. Citing, Beraska v Stardust Records, Inc., 30 Cal. Rptr. 504 (1963)

A de facto director of a corporation is one in possession of and exercising powers of the office under claim and color of an election or appointment.

18B AmJur2d, Corporations, § 1414.

The distinction between a de facto and a de jure officer is significant only where the rights of third parties or creditors are involved or prejudiced by the actions of such disputed corporate officers. Dillon v Scotten, Dillon Co., (DC Del.) 335 F.Supp. 566.

765

In this case, Chan's attempts to use the de facto/de jure distinction to his advantage, fail.

Even though there is doubt as to the initial election or appointment of Chan to one of the five directorships of the corporation, there is no dispute over the fact that he accepted and assumed the position and exercised his power and authority as a director from at least September 21, 1982. Although a formal shareholders meeting and election may not have been held, it is undisputed that Chan, as a 12% stockholder and Cheung Ting Bong, who held 83% of the shares acquiesced in and ratified Chan's directorship.

Certainly if a corporation may ratify and thereby render binding upon it the originally unauthorized acts and contracts of its officers or other agents (18B AmJur2d, Corporations, § 1635 et seq.), 95% of the shareholders of a corporation who proceed as if they had regularly met and elected directors pursuant to the by-laws of the corporation can ratify the informal action which ripens into formal action which is not subject to attack by those same individuals whose acquiescence and ratification produces the final result. Corporations have the power to waive provisions of their by-laws introduced for the protection of the corporation. Schraft v Leis, 686 P.2d 865 (Kan.). This may be done expressly or by implication, Havana C.R. Co. v Central Trust Co., 204 F. 546, cert den 234 U.S. 755, 34 S.Ct. 673, 58 L.Ed. 1578. Corporate by-laws may be waived by a continued disregard thereof by the parties for

whose benefit they were enacted. <u>Schraft v Leis</u>, supra; <u>Bay City Lbr. Co. v Anderson</u>, 111 P.2d 771 (Wash.) 169 ALR 1369.

Since Cheung Ting Bong and Chan could have formally met and could have formally elected Chan as a director, these are actions which can be ratified. 18B AmJur2d, <u>Corporations</u>, § 1636.

In this context, it thus becomes clear that the doctrine of `de facto directorship has no meaning nor substance in so far as Chan is concerned. What Chan wishes to have done is to utilize the doctrine as a shield to avoid the application of Section 2.7. This is neither the purpose nor the legal effect of the doctrine. For the period in question, September, 1982 to early 1984, third parties, such as creditors, were not involved, <u>per se</u>. Section 2.7 requires the determination of the <u>status</u> of Chan for this period of time, not the relationship with third parties. Third parties such as the Government come into the picture only after the status of Chan is determined. The status is determined by reference to the actions of the shareholders and directors of the corporation during the pertinent time. Third parties are not involved in this determination and the doctrine is not applicable. <u>Dillon v Scotten, Dillon Co.</u>, supra.[3]

---

<u>3</u>/
As a further example of the distinction, if in October in 1982, Chan had entered into a contract as an officer or director of the corporation with the Government, an explanation of his authority to enter into the contract might invoke the de facto doctrine <u>for the protection of the Government</u>.

767

Even should Chan's theory of de facto director status have some merit, it is concluded that he has raised no genuine issue of fact to dispel the finding that he was a director of the Bank.

The Government and the Receiver have come forward with many corporate documents which demonstrate that Chan accepted a directorship of the Bank, functioned as a director of the Bank, and served as such until he resigned. The only opposition Chan offers in response is Chan's own denial in his deposition that he was a director and, in essence, that he didn't know what was going on since co-defendant T.B. Cheung and Manuel Sablan ran the corporation.

Chan mis-perceives the posture of this summary judgment motion of the Government and the Receiver when he states: "The moving parties, plaintiff CNMI and the Receiver, have the burden of demonstrating the absence of genuine issues of material fact; and as all inferences must be drawn must be drawn in the light most favorable to the defendant (Chan) when considering a motion for summary judgment;..." (Page 4, cross-defendant Chan's Opposition to the Motion for Summary Judgment.)

It is now settled that a party moving for summary judgment under Rule 56 need not support its motion with affidavits or similar materials that negate the opposing party's claim, but need only point out to the trial court that there is the absence of evidence to support the nonmoving party's claims. After adequate time for discovery and upon motion, summary

768

judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing of an essential element of his case with respect to which he has the burden of proof.

Celotex Corporation v Catrett, __ U.S.__ 54LW 4775, 4777.

In this case, there is no doubt that adequate time for discovery has been provided. In fact, the time for discovery, as set by the court some months ago, has passed. The moving parties have supported their motions with uncontradicted corporate documents.

To play out the trial scenario, the Government and Receiver would introduce the same corporate documents as evidence with all the presumptions of regularity, authenticity and correctness to which they are entitled. 29 AmJur2d, Evidence, § 169. The books and records of the corporation prove the corporate acts and they are the best evidence of corporate acts and proceedings. Denver & R.G.R. Co. v Arizona & C.R. Co., 233 U.S. 601, 34 S.Ct. 691, 58 L.Ed. 1111, 66 ALR 1328 s, 48 ALR2d 1260; 18A AmJur2d, Corporations, § 338; 29 AmJur2d Evidence,

769

§§ 478, 479. Parol evidence may be admitted to supply omissions or to explain ambiguities, 30 AmJur2d, Evidence, § 1025, but since Chan has never contradicted the records supporting this motion, the only testimony that could possibly be offered in response is his self-serving denial of being a director.[4]

This fails "to make a sufficient showing of an essential element" for Chan's case. Once the uncontradicted corporate documents establish a prima facie case for the Government and the Receiver, Chan has the burden of going forward with evidence to rebut or meet the presumption of directorship shown by the corporate records. Com.R.Evid. 301. One of the principal purposes of the summary judgment rule set forth in 56(c) is to isolate and dispose of factually unsupported claims or defenses. Celotex v Catrett, supra at 4777. (emphasis added). In view of the uncontradicted corporate records showing Chan was a director, Chan's assertions in his deposition, (if testified to at trial) do not produce competent evidence to support a judgment for Chan. Chan cannot oppose the summary judgment motion by merely making a conclusionary statement or arriving at a legal conclusion – that he was not a director. Fontenot v UpJohn Co., 780 F.2d 1190, 1195-1196 (5th Cir. 1986).

Beraksa v Stardust Records, Inc., supra, is of no solice to Chan. That case involved litigation between optionees to

---

[4] In reading the portions of Chan's deposition referred to in his opposition to the motion, even his denial is equivocal. For example, on page 30, lines 10-20, he states he felt he was a board member.

770

purchase property of a corporation and the corporation. The internal actions and proceedings of the corporation were in dispute. Such is not the case here.

In summary, Chan has failed to come forward with any competent, meaningful, or factual response which would necessitate a trial with the attendant time and expense. This is what Rule 56 is designed for and this is a proper application of that rule in this case. A trial serves no useful purpose.

It is therefore concluded that Norman Chan was a director of the Bank from at least September 21, 1982 to the date of his resignation in 1984.

It is also concluded that Chan was a director at the time the Bank began engaging in business. Although some argument is made that the Bank first engaged in business when it started to obtain subscriptions for stock, it is clear that such is not the case and it is uncontradicted that the Bank opened its doors for business with the public either February 3, 1983 or shortly thereafter. Section 2.7 is designed for the protection of the public when it deals with an undercapitalized corporation. The process of subscribing for shares by its very nature, does not involve the general public nor is it engaging in business in the sense of Section 2.7.

2. KARL REYES

Most of what has been said about Norman Chan applies to defendant Reyes, and then some. Counsel concedes that he cannot dispute the intimate involvement of Reyes which exceeds

that of Chan. The only argument advanced is that since Reyes became the corporation's president and director from August 1st on, he was not an officer or director when the corporation first engaged in business. The "business" was the prior attempt to get stock subscriptions and a shareholders meeting. As seen above, this does not constitute engaging in business for the purposes of Section 2.7. There is no dispute that Reyes was president and a director in February, 1983 when the Bank began its business with the public in its undercapitalized condition.

CONCLUSION

It is found that no genuine issue of fact is raised about the activities and participation of defendants Chan and Reyes as directors and officers of the Bank. As a matter of law, the court concludes that they were directors at the time the Bank engaged in business and the Bank had failed to have the required subscriptions and paid-in capital. Therefore, they are liable and the extent of damages will be ascertained at trial.

Summary judgment on liability is hereby entered for the Government of the Northern Mariana Islands and the Receiver against Norman Chan and Karl Reyes pursuant to Title 37, Section 2.7 Trust Territory Regulations.

Dated this 15th day of July, 1986.

_____
Robert A. Hefner, Chief Judge